**In re William Michael KECSKES, Debtor.**

**FAIRWAY GOLFVIEW HOMES, INC., Plaintiff,**

v.

**William Michael KECSKES, Defendant.**

**Bankruptcy No. 90–35921–BKC–RAM. Adv. No. 90–0495–BKC–RAM–A.**

United States Bankruptcy Court, S.D. Florida.

Feb. 10, 1992.

Paul E. Gifford, Miami, Fla., for plaintiff.

Robert C. Furr, Furr & Cohen, P.A., Boca Raton, Fla., for defendant.

## MEMORANDUM OPINION

ROBERT A. MARK, Bankruptcy Judge.

Plaintiff, Fairway Golfview Homes, Inc. ("Fairway"), seeks a determination that a state court judgment debt of $1,768,220.50 owed by defendant, William Michael Kecskes ("Kecskes" or "Debtor"), is nondischargeable. The plaintiff alleges that its state court judgment against the Debtor is nondischargeable under § 523(a)(6) of the Bankruptcy Code because the judgment was predicated upon willful and malicious injury by the Debtor against the plaintiff's property. Arguing that the state court record conclusively establishes the elements of its § 523(a)(6) claim, plaintiff has filed a Motion for Summary Judgment.

After reviewing applicable portions of the state court record and considering the arguments of counsel, the Court finds that summary judgment must be granted. The doctrine of collateral estoppel precludes the Debtor from relitigating whether Fairway's claim is a debt for willful and malicious injury to plaintiff's property.

## FACTUAL BACKGROUND AND STATE COURT PROCEEDINGS

Fairway owns a tract of land (the "Property") in Dade County, Florida. On March 8, 1989, the Debtor, a real estate broker, recorded a claim of lien against the Property in the amount of $16,909.32 based upon his alleged performance of consulting services for Fairway.

Claiming the lien to be fraudulent, Fairway filed its Emergency Petition For Cancellation Of Fraudulent Lien, Damages And Other Relief in the Circuit Court of Dade County, Florida, on June 20, 1989. The Petition expressly alleged that Kecskes willfully violated Sections 713.31 and 713.03, Florida Statutes (1989) by filing fraudulent liens against Fairway's property and property owned by other plaintiffs. The Petition sought compensatory damages and punitive damages pursuant to § 713.-31(2)(c).

Kecskes did not respond to the Petition. On July 27, 1989, the circuit court entered a Default Final Judgment canceling the challenged liens. The court retained jurisdiction to "award plaintiffs attorney's fees and compensatory and punitive damages upon proper presentation of evidence at a duly noticed hearing."

On September 13, 1989, plaintiff filed an Emergency Motion For Contempt And To Strike Liens Of Record And For An Injunction. The motion alleged that Kecskes rerecorded the same liens for the same services in contempt of the Court's July 27, 1989 judgment. Fairway claimed that Kecskes' renewed filing had caused it additional damage and again prayed for compensatory and punitive damages.

The circuit court conducted an evidentiary hearing on December 11, 1989. Kecskes appeared and testified. On January 23, 1990, the court entered an order granting the motion, canceling the liens and restraining defendant from filing further liens of record on plaintiff's property. The order also warned Kecskes that "any further recordation of these or similar liens on plaintiffs' property will be viewed as contempt by the Court." The court also specifically retained jurisdiction to award compensatory and punitive damages and attorney's fees.

Undaunted, Debtor refiled the liens again which not surprisingly generated further proceedings in the circuit court. Following an evidentiary hearing on August 2, 1990, the circuit court entered its Amended Final Judgment on August 14, 1990 awarding $442,000 in compensatory and $1,326,-000 in punitive damages against Debtor plus $220.50 in costs. Kecskes had notice of the August 2 hearing but chose not to appear. The August 1990 judgment found (1) Debtor's conduct "willful, wrongful and fraudulent"; (2) the liens were filed to induce and extort the plaintiff to pay Debtor money to which he was not entitled; (3) Debtor's conduct was particularly "reprehensible" since the plaintiff was a client of the Debtor who was a real estate broker, and the liens were placed upon the properties to extort real estate brokerage commissions to which Debtor was not entitled. The compensatory damage award was based upon evidence that the fraudulent lien prevented the closing of a contract to sell the Property. The court also found cause under § 768.72, Florida Statutes (1989) to award punitive damages representing three times the compensatory award.

Debtor then filed an Emergency Motion for Rehearing of Amended Final Judgment alleging that the court relied upon fraudulent evidence to establish damages. Specifically, the Debtor claimed that he had no knowledge of the alleged contract that supported the damage claim and could not have refuted the claim even if he had attended the hearing without additional time to investigate. The Debtor claimed that "new evidence" would show that the contract and the plaintiff's claim were fraudulent and that the judgment should therefore be set aside.

On December 21, 1990, Circuit Court Judge Joseph Farina conducted a hearing on the Debtor's Emergency Motion. The transcript of that hearing reflects that Kecskes was given the opportunity to elaborate on the arguments set forth in his Emergency Motion and to provide testimony and exhibits in support of his claims. The court considered Kecskes' evidence and also considered testimony offered by three witnesses for the plaintiff.

Judge Farina denied the Debtor's motion. He concluded that Kecskes' evidence was not "newly discovered evidence" but was instead discoverable prior to the August 2 hearing. Moreover, the court was "satis-

fied that there has not been a fraud upon this Court." December 21, 1990 transcript, p. 28.

Kecskes filed an appeal. Upon plaintiff's motion, the District Court of Appeals entered an order on August 5, 1991, quashing defendant's appeal as frivolous. On October 4, 1991, the Florida Supreme Court denied Kecskes Petition for Review apparently concluding the state court proceedings.

■ On October 8, 1991, Kecskes filed a new lawsuit in circuit court seeking to set aside the August 14, 1990 final judgment. This new lawsuit is irrelevant to the issues here. The mere filing of this new case does not affect the finality of the prior state court judgment.

## SUMMARY OF ARGUMENT AND ISSUES PRESENTED

Plaintiff argues that the doctrine of collateral estoppel precludes relitigating issues determined by the state court. Plaintiff contends that the elements of its dischargeability claims in the bankruptcy court were already litigated and determined in its favor in the state court. The Debtor argues that he was misled as to his exposure at the damages hearing in state court and that he did not attend as he was willing to concede the extremely limited damages he thought he was facing. The Debtor argues that the transcript of the first state court proceeding and the plaintiff's pleadings leading to the damages hearing did not put him on sufficient notice of the claims he was facing or the damages that Fairway was seeking. He concludes that the claims were therefore not "actually litigated" so collateral estoppel should not apply.

The Court must determine whether each of the elements of collateral estoppel apply. The primary elements in dispute are whether the claims in the state court were "actually litigated" and whether the proof required to establish the damages necessarily established willful and malicious injury under § 523(a)(6).

## DISCUSSION

■ Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit. *In re Stowell,* 113 B.R. 322 (Bankr.W.D.Tex.1990). The principles of collateral estoppel may be applied to foreclose a relitigation of facts in a dischargeability proceeding. *In re Latch,* 820 F.2d 1163 (11th Cir.1987); *In re Halpern,* 810 F.2d 1061 (11th Cir.1987); *In re Held,* 734 F.2d 628 (11th Cir.1984).

■ In considering the preclusive effect of the prior Florida judgment, the Court must first decide whether to apply the collateral estoppel law of Florida or the federal law of collateral estoppel. Despite some difference of opinion in prior federal decisions, this Court recently concluded that the issue is no longer subject to doubt—if the prior judgment was in a state court, the collateral estoppel law of that state must be applied. *Johnson v. Keene,* 135 B.R. 162 (Bankr.S.D.Fla.1991); *See also In re Feldstein,* 93 B.R. 272 (Bankr.M.D.Fla. 1988); *Chang v. Daniels (In re Daniels),* 91 B.R. 981 (Bankr.M.D.Fla.1988); *Sciarrone v. Brownlee (Matter of Brownlee),* 83 B.R. 836 (Bankr.N.D.Ga.1988).

■ This Court therefore looks to Florida law to determine the criteria for use of the state court judgment to collaterally estop Kecskes from litigating this dischargeability proceeding. The three elements required to give the Florida state court judgment such a preclusive effect are whether the parties are identical, the issues are identical and the matter has been fully litigated in a court of competent jurisdiction. *Trucking Employees of N. Jersey Welfare Fund, Inc. v. Romano,* 450 So.2d 843 (Fla.1984); *Mobil Oil Corp. v. Shevin,* 354 So.2d 372 (Fla.1977); *Universal Construction Co. v. City of Ft. Lauderdale,* 68 So.2d 366 (Fla.1953).

The state court judgment in this case was in favor of the plaintiff Fairway and against the defendant Debtor. Thus, the identity of parties element is satisfied. The two remaining issues require further analysis. First, in entering the judgment, did the state court necessarily resolve is-

sues identical to the issues which must be decided to sustain a § 523(a)(6) claim? Second, were the issues "actually litigated" since the judgment was entered after a hearing the Debtor did not attend? As discussed below, both of these questions are answered affirmatively. Thus, the doctrine of collateral estoppel must be applied and summary judgment is appropriate.

## THE JUDGMENT ARISING FROM THE FRAUDULENT LIEN ESTABLISHED WILLFUL AND MALICIOUS INJURY AS REQUIRED BY § 523(a)(6)

The issue of nondischargeability of a debt is exclusively a matter of federal law governed by the terms of the Bankruptcy Code. *Grogan v. Garner,* — U.S. —, —, —, 111 S.Ct. 654, 658, 112 L.Ed.2d 755, 763 (1991), *citing Brown v. Felsen,* 442 U.S. 127, 129–130, 136, 99 S.Ct. 2205, 2208, 2211, 60 L.Ed.2d 767 (1979). Therefore, the dischargeability of a debt can never be precisely at issue in a non-bankruptcy lawsuit. Nevertheless, a bankruptcy court can and must give collateral estoppel effect to those elements of the non-bankruptcy claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action. *Grogan,* — U.S. at —, 111 S.Ct. at 658, 112 L.Ed.2d at 763.

Under § 523(a)(6) a debt is excepted from discharge if it is based on a "willful and malicious injury by the debtor to another entity or to the property of another entity". "The word 'willful' means 'deliberate and intentional' ". *In re Scotella,* 18 B.R. 975, 977 (Bankr.N.D.Ill.1982). " 'Malicious,' as used in § 523(a)(6), means 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill will.' " *Scotella,* 18 B.R. at 977; *See also,* 3 LAWRENCE P. KING et al., COLLIER ON BANKRUPTCY, Paragraph 523.16[1], at 523–129 to 523–134 (15th ed. 1991).

Fairway sought and obtained compensatory damages under § 713.31, Florida Statutes (1989) which in pertinent part provides as follows:

(2)(a) Any lien asserted under this part in which the lienor has ... *willfully* included a claim for work not performed upon or materials not furnished for the property upon which he seeks to impress such lien or in which the lienor has compiled his claim with such *willful* and gross negligence as to amount to a *willful* exaggeration shall be deemed a fraudulent lien. (emphasis supplied)

(c) ... The lienor who files a fraudulent lien shall be liable to the owner or the defrauded party in damages ... and punitive damages.

From the statutory language, it is clear that a judgment for damages under § 713.-31(2)(a) can only arise from willful conduct. The word is used three times in the section. The disputed issue is whether the judgment under this statute necessarily included a finding of malice.

Neither the statute nor any Florida cases cited to the Court require "malice" to establish a fraudulent lien claim. Nevertheless, the August, 1990 judgment describes conduct which clearly meets the § 523(a)(6) standard of malicious conduct. The Court first found that Kecskes wilfully filed a fraudulent lien. While this alone would not conclusively establish malice, paragraphs two and three of the court's findings do describe malicious conduct:

2. That these fraudulent liens were filed for the purpose of inducing and *extorting* the Plaintiffs to pay the Defendant, WILLIAM KECSKES, sums of money to which he was not entitled.

3. That this conduct was even more *reprehensible* since the Plaintiff was a client of the Defendant, who was a real estate broker, and that the liens were placed upon the aforesaid property for the purpose of *extorting* real estate brokerage commissions to which the Defendant was not entitled.

August 14, 1990 Amended Final Judgment (emphasis supplied).

The state court's description of Kecskes' conduct as "reprehensible" and for the purpose of "extorting" money together with its further decision to impose punitive dam-

ages conclusively establishes at least the implied or constructive malice required to sustain a § 523(a)(6) claim. *See Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1263 (11th Cir.1988).

Although a different statute was at issue, the court's decision and reasoning is instructive in *In re Klayminc*, 37 B.R. 728 (Bankr.S.D.Fla.1984). Referring to the Fifth Circuit's definition of malicious as "the absence of just cause or excuse," *Seven Elves v. Eskenazi*, 704 F.2d 241, 245 (5th Cir.1983), Bankruptcy Judge Britton analyzed the conduct of debtors who continued to infringe upon plaintiff's trademark after entry of a federal injunction. He found that the debtors intentionally infringed the trademark without any cause or excuse and therefore had willfully and maliciously injured plaintiff's property. The damages attributable to this conduct were held nondischargeable under § 523(a)(6).

In this case, the Debtor intentionally violated the January 23, 1990 state court order expressly restraining him from refiling liens against the Property. Like the debtors in *Klayminc*, the Debtor here acted without just cause or excuse. His conduct was "malicious" within the meaning of the statute. In sum, this Court is satisfied that the compensatory damages awarded under § 713.31 arose from willful and malicious conduct by the Debtor.

 The state court also imposed punitive damages pursuant to § 768.72, Florida Statutes (1989). The court found the general provisions for imposing punitive damages contained in that section to "be applicable to the facts presented to it, and that punitive damages in the amount of $1,326,000 would be appropriate." August 14, 1990 Amended Final Judgment, p. 2.

Since the "reprehensible" conduct described in the judgment gave rise to both the compensatory and punitive damages, it follows that the punitive damages are also the product of willful and malicious conduct. Moreover, under Florida law, punitive damages may be awarded only if a malicious act occurs. *Winn & Lovett Grocery Co. v. Archer*, 126 Fla. 308, 171 So.

214 (Fla.1936); *Dorsky v. Highlands*, 528 So.2d 411, 412 (Fla. 2d DCA 1988). Thus, both the compensatory and punitive damages awarded in the state court judgment necessarily required a finding of willful and malicious injury to Fairway's Property.

### THE STATE COURT ACTION WAS "ACTUALLY LITIGATED"

 The last element requires the Court to determine whether the matter was actually litigated. Under Florida law, even a default judgment is to be given full preclusive effect if the defendant had an adequate opportunity to litigate. *Cabinet Craft, Inc. v. A.G. Spanos Enterprises, Inc.*, 348 So.2d 920 (Fla. 2d DCA 1977); *Ennis v. Giblin*, 147 Fla. 113, 2 So.2d 382 (Fla.1941). *See In re Marsowicz*, 120 B.R. 602 (Bankr.S.D.Fla.1990). Having reviewed the entire available record including, in particular, the transcript of the December 21, 1990 hearing, this Court is convinced that the Debtor had sufficient notice of plaintiff's allegations to constitute an opportunity to litigate.

To be more specific, the June 1989 "Emergency Petition For Cancellation of Fraudulent Lien, Damages And Other Relief" cited thrice to § 713 and to the punitive damages provision of § 713.31(c)(2). In the Default Final Judgment issued in July 1989, the court reserved jurisdiction to award punitive damages upon proper presentation of evidence at a duly noticed hearing. The Emergency Motion for Contempt filed in September 1989 also prayed for punitive damages, and the court again reserved its jurisdiction to award punitive damages in its Order of January 1990. In its Amended Final Judgment awarding compensatory and punitive damages issued in August 1990, the court referred to the fraudulent liens as well as to evidence presented at the damages hearing and relied upon § 768.72 in awarding treble punitive damages. Section 768.72 permits such damages if "there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages."

Although the Debtor later filed a motion for rehearing and to set aside the judgment alleging the presence of newly discovered evidence and alleging that the judgment was obtained through fraud, this motion was denied in its entirety in December 1990. The Debtor admitted notice of the August 1990 hearing which resulted in the Judgment, but claimed he had no notice that the plaintiff would be seeking substantial damages. These issues were argued extensively at the December 21, 1990 hearing and Judge Farina concluded that all of the evidence and issues raised by the Debtor could have been raised at the August hearing if the Debtor had acted diligently. Moreover, it is apparent from the transcript of the December 21, 1990 circuit court proceeding that the plaintiff was required to put on a prima facie case at the August damages hearing. The transcript contains numerous reference by both parties to evidence presented at the damages hearing. Denial of Kecskes' Emergency Motion on December 21, 1990 reaffirmed the sufficiency of the evidence supporting the final judgment. The Debtor's appeal to the Third District Court of Appeal of Florida was quashed as frivolous in August 1991, and the Florida Supreme Court denied Debtor's Petition for Review. This Court is thus satisfied that even though the Debtor did not appear at the damages hearing, the Debtor had a full opportunity to litigate. His ill-advised decision not to appear at certain hearings does not defeat application of collateral estoppel.

## CONCLUSION

The state court litigation was sufficient under Florida law to meet the "actually litigated" test for collateral estoppel purposes. As the issues and parties have also been found to be identical, this Court must give full preclusive effect to the state court judgment and thus finds the debt of $1,768,220.50 owed by the Debtor, William M. Kecskes, to be nondischargeable under 11 U.S.C. § 523(a)(6).

A separate judgment will be entered excepting the debt from discharge in accordance with Rules 7058 and 9021, *Fed. R.Bankr.P.*