In re Charles Russell **HALE**, Sarah
Alice Hale, Debtors.

**NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,**
Plaintiff,

v.

Charles Russell **HALE**, Defendant.

**Bankruptcy No. 3-92-01785.
Adv. No. 3-92-0245.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

June 1, 1993.

Charles and Sarah Alice Hale, Lebanon, OH, debtors.

John E. Sharts, Springboro, OH, for Charles Russell Hale.

Patrick K. Dunphy, Dayton, OH, for Nationwide Mut. Fire Ins. Co.

### DECISION ON ORDER GRANTING JUDGMENT AGAINST CHARLES RUSSELL HALE

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I)—determinations as to the dischargeability of particular debts. *Atassi v. McLaren (In re McLaren),* 990 F.2d 850 (6th Cir.1993).

Presently pending before the court is a motion for summary judgment filed by the plaintiff, Nationwide Mutual Fire Insurance Company ("Nationwide") (Doc. 10–1). Nationwide asserts that it is entitled to summary judgment under the doctrine of issue preclusion or, alternatively, under summary judgment principles.

The court finds that the filings in this proceeding establish the following uncontroverted facts.

1. Nationwide issued an insurance policy to Donald and Joyce Bishop upon a 1990 5610 Ford tractor they owned. (Doc. 10–1, Ex. B, Tr. at 4). In July of 1990, the Bishops reported to their insurance carrier that the tractor had been stolen. (Doc. 10–1, Ex. B, Tr. at 4). Pursuant to the insurance contract, Nationwide paid the Bishops $14,000 for their loss. (Doc. 10–1, Ex. B, Tr. at 4–5). Nationwide received subrogation rights under this contract. (Doc. 10–1, Ex. B, Tr. at 5).

2. Thereafter, the tractor was recovered by the Kenton County, Kentucky Sheriff's Department. (Doc. 10–1, Ex. B, Tr. at 5). Nationwide hired the defendant, Charles Russell Hale ("Hale"), to recover the tractor from the sheriff's department and receive bids from potential buyers of the tractor. (Doc. 10–1, Ex. B, Tr. at 5–6). Nationwide was to pay Hale $100 for this service. (Doc. 10–1, Ex. B, Tr. at 6).

3. Hale submitted a bid for the tractor in the amount of $12,050. (Doc. 10–1, Ex. B, Tr. at 6). Nationwide informed Hale that he had submitted the highest bid. (Doc. 10–1, Ex. B, Tr. at 6–7). Nationwide then made a demand for payment upon Hale in the amount of $12,050 less the $100 owed Hale for his services and less $50 Hale paid in advance towing charges from the sheriff's department. (Doc. 10–1, Ex. B, Tr. at 7). Hale failed to pay Nationwide for the tractor. (Doc. 10–1, Ex. B, Tr. at 7).

4. Nationwide made several attempts to contact Hale to obtain payment for the tractor. (Doc. 10–1, Ex. B, Tr. at 7). Although Hale stated that payment was forthcoming, he did not pay for the tractor. (Doc. 10–1, Ex. B, Tr. at 7). Eventually, Hale informed Nationwide that he did not have the money to pay for the tractor. (Doc. 10–1, Ex. B, Tr. at 8).

5. Nationwide requested that Hale return the tractor. (Doc. 10–1, Ex. B, Tr. at 8). At this time, Hale told Nationwide that he did not have the tractor because he had sold it. (Doc. 10–1, Ex. B, Tr. at 8). Nationwide never received payment for the tractor from Hale. (Doc. 10–1, Ex. B, Tr. at 8).

6. Nationwide filed an action against Hale in the Common Pleas Court of Warren County, Ohio on July 23, 1991, alleging causes of action for breach of contract, breach of fiduciary duty, unjust enrichment, and conversion. (Doc. 1–1, Ex. A). Nationwide alleged in the complaint that Hale "wilfully, maliciously, and unlawfully converted the property of Nationwide for his own use and benefit." (Doc. 1–1, Ex. A, para. 27).

7. On February 27, 1992, Nationwide filed a Motion for Default Judgment in the Common Pleas Court of Warren County, Ohio. (Doc. 10–1, Ex. A).

8. A default hearing was held on March 11, 1992. (Doc. 10–1, Ex. B). After hearing evidence, including the testimony of a claims representative for Nationwide, the state court awarded damages in the amount of $11,900, constituting the $12,050 bid price less the $150 that Hale had paid, and found that there was a "wrongful conversion" and awarded punitive damages in the amount of $2,000, together with interest at the legal rate from December 1, 1990 and costs. In accordance with this holding, an Entry Granting Default Judgment was filed in the Common Pleas Court of Warren County. (Doc. 10–1, Ex. C).

9. On April 10, 1992, Hale filed for relief under chapter 7 of the Bankruptcy Code.

10. Nationwide commenced an adversary proceeding in this court alleging that the entire state court judgment is a nondischargeable debt under 11 U.S.C. § 523(a). Subsequently, Nationwide filed a Motion Of Plaintiff Nationwide Mutual Fire Insurance Company For Summary Judgment (Doc. 10–1) asserting that the default judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).[1] (Doc. 10–1). Nationwide attached a certified copy of the Motion For Default Judgment And Notice Of Hearing, a certified transcript of the default hearing held in the Court of Common Pleas for Warren County, and a certified copy of an Entry Granting Default Judgment. (Doc. 10–1, Exs. A–C).

11. Hale filed a Motion Of Defendant Contra (Doc. 12–1) in response.

12. Subsequently, this court entered an order (Doc. 13–1, 13–2) which granted the parties an opportunity to address the following issues:

1. If the state court judgment at issue in this proceeding is not granted preclusive effect by the bankruptcy court, is the plaintiff, nevertheless, entitled to summary judgment pursuant to 11 U.S.C. § 523(a)(6)?

2. If the plaintiff is entitled to summary judgment pursuant to 11 U.S.C. § 523(a)(6), is the plaintiff entitled to an award of punitive damages as a part of the total damage award?

3. In the absence of a written waiver by the plaintiff of any claim for punitive damages, if the bankruptcy court would award punitive damages, is an evidentiary hearing required in order to fix the amount of the punitive damages?

In response to this order Hale filed a Memorandum Of Defendants (Doc. 14–1) and a Supplemental Memorandum Of Defendant, Charles Russell Hale (Doc. 16–1). Nationwide filed a Memorandum Of Plaintiff Nationwide Mutual Fire Insurance Company In Response To Court's Order Of 3/16/93 (Doc. 15–1).

## DISCUSSION

Summary judgment is governed by Federal Rule of Bankruptcy Procedure 7056 which incorporates Rule 56 of the Federal Rules of Civil Procedure. Rule 7056(c), in relevant part, provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

1. In its complaint Nationwide alleged that the debt owed it by Hale is nondischargeable pursuant to § 523(a) "because such debt was incurred as the result of fraud of the debtor, Charles Russell Hale, now acting in a fiduciary capacity." (Doc. 1–1). This court concludes that this debt is nondischargeable under § 523(a)(6) and, therefore, finds it unnecessary to address other causes of action alleged under § 523(a)(2) or (4).

moving party is entitled to a judgment as a matter of law.

■ "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. The burden of demonstrating the existence of a genuine issue of material fact lies, however, with the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*"

*Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56 (1986).

No genuine issues of material fact exist; therefore, this proceeding is appropriate for summary judgment.

The determination of this proceeding requires an examination of preclusion concepts, particularly the doctrine of issue preclusion (collateral estoppel). The question may be framed: "Is an Ohio state court default judgment entitled to preclusive effect in the context of dischargeability determinations under 11 U.S.C. § 523(c)."[2]

If the default judgment is not entitled to preclusive effect, an additional question is whether Nationwide, based upon the pleadings, is entitled to summary judgment.

■ Under the Constitution's Full Faith and Credit Clause[3] implemented by the full faith and credit statute, 28 U.S.C. § 1738, federal courts must give state court judgments the same preclusive effect as the state which rendered the judgment. Section 1738 provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States and its Territories and Possessions they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 378–80, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985); *Migra v. Warren City School Dist. Bd. Of Ed.*, 465 U.S. 75, 80, 104 S.Ct. 892, 895–96, 79 L.Ed.2d 56 (1984); *Osborn v. Ashland Cty. Bd. Alcohol, Drug Addiction and Mental Health Services*, 979 F.2d 1131, 1133 (6th Cir.1992).

■ The full faith and credit statute mandates that a federal court initially refer to the law of the State in which the judgment was rendered to determine its preclusive effect. *Marrese*, 470 U.S. at 380–82, 105 S.Ct. at 1332. If state law would deny preclusive effect, then the analysis ends; however, if state law would accord the judgment preclusive effect, it must then be determined whether an exception to § 1738 applies. *Id.* 470 U.S. at 382–83, 105 S.Ct. at 1333.

■ Relevant Ohio law provides:

> A point of law or a fact which was actually and directly in issue in the for-

---

**2.** This proceeding is brought specifically under 11 U.S.C. § 523(a)(6); however, the rationale for determining the issues in this proceeding is equally applicable under § 523(a)(2) and § 523(a)(4) because these sections, 523(a)(2), 523(a)(4), and 523(a)(6), are committed to the *exclusive* jurisdiction of the bankruptcy court pursuant to 11 U.S.C. § 523(c). Section 523(c), in relevant part, provides:

>> (1) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be

discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

**3.** U.S. Const., art. IV, § 1.

mer action, and was there passed upon and determined by a court of competent jurisdiction, may not be drawn in question in a subsequent action between the same parties or their privies. The prior judgment estops a party, or a person in privity with him, from subsequently relitigating the identical issue raised in the prior action.

*Trautwein v. Sorgenfrei,* 58 Ohio St.2d 493, 391 N.E.2d 326, 327 (1979) (citation omitted); *see also Goodson v. McDonough Power Equipment, Inc.,* 2 Ohio St.3d 193, 443 N.E.2d 978, 979 (1983). This principle has been applied to default judgments. *See Corydon Palmer Dental Society v. Johnson, Johnson & Assocs.,* No. 87 CA 121, 1988 WL 21334, 1988 Ohio App. LEXIS 554 (Ct. of Appeals of Ohio, Feb. 16, 1988) (citing 63 *O.Jur.3d,* Judgments § 443 at 235).

█ Since Ohio law accords default judgments preclusive effect, this court must determine whether there is an exception to 28 U.S.C. § 1738 with respect to a state court default judgment in the context of dischargeability determinations under 11 U.S.C. § 523(c). In making this determination the Supreme Court stated:

> [The] [Q]uestion is whether the concerns underlying a particular grant of exclusive jurisdiction justify a finding of an implied partial repeal of § 1738. Resolution of this question will depend on the particular federal statute as well as the nature of the claim or issue involved in the subsequent federal action. Our previous decisions indicate that the primary consideration must be the intent of Congress.

*Marrese,* 470 U.S. at 386, 105 S.Ct. at 1335. In *Marrese,* the Supreme Court cited *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) as an example in which the Court found congressional intent that state judgments would not have claim preclusive effect (res judicata) on dischargeability determinations in bankruptcy. *Marrese,* 470 U.S. at 386–87, 105 S.Ct. at 1335.

In *Brown v. Felsen,* there was a settlement of a state court collection suit in which Felsen stipulated that Brown would receive a judgment against Felsen. Neither the stipulation nor the judgment stated the cause of action upon which Felsen's liability to Brown was based. Thereafter, Felsen filed a bankruptcy petition and sought to have this debt to Brown discharged. In the bankruptcy court, Brown sought to establish that Felsen's debt was not dischargeable, alleging that the debt was the product of Felsen's fraud, deceit, and malicious conversion thereby coming within §§ 17a(2) and 17a(4), provisions contained in the former Bankruptcy Act. Felsen stated that the prior state court proceeding did not result in a finding of fraud and contended that claim preclusion barred relitigation of the nature of Felsen's debt to Brown even though the application of § 17 had not been in issue in the prior proceeding.

The Supreme Court found that Congress' primary purpose in committing § 17 dischargeability issues to the jurisdiction of the bankruptcy court was to eliminate "postbankruptcy state-court collection suits as a means of resolving certain § 17 dischargeability questions," and because "[i]n those suits creditors had taken advantage of debtors who were unable to retain counsel because bankruptcy had stripped them of their assets." *Brown* at 2211. A secondary purpose "was to take these § 17 claims away from state courts that seldom dealt with the federal bankruptcy laws and to give those claims to the bankruptcy court so that it could develop expertise in handling them." *Id.* (footnote omitted).

The Supreme Court noted that a policy requiring dischargeability issues to be raised in state court could "undercut a statutory policy in favor of resolving § 17 questions in bankruptcy court, and would force state courts to decide these questions at a stage when they are not directly in issue and neither party has a full incentive to litigate them." *Id.* Further:

> When § 17 issues are not identical to those arising under state law, the parties have little incentive to litigate them. In the collection suit, the debtor's bankruptcy is still hypothetical. The rule pro-

posed by respondent [Felsen] would force an otherwise unwilling party to try § 17 questions to the hilt in order to protect himself against the mere possibility that a debtor might take bankruptcy in the future. In many cases, such litigation would prove, in the end, to have been entirely unnecessary, and it is not surprising that at least one state court has expressly refused to embroil itself in an advisory adjudication of this kind. And absent trial on the merits, there is no particular reason to favor extraneous facts thrown into a record for § 17 purposes over facts adduced before the bankruptcy court.

If a state court should expressly rule on § 17 questions, then giving finality to those rulings would undercut Congress' intention to commit § 17 issues to the jurisdiction of the bankruptcy court.

*Id.* (citation omitted). *See also Spilman v. Harley,* 656 F.2d 224, 226 (6th Cir.1981) ("Congress intended to take the determinations governed by 11 U.S.C. § 523(c) away from state courts and grant exclusive jurisdiction in the bankruptcy courts.").

▇ Unlike the doctrine of claim preclusion, which was at issue in *Brown,* the doctrine of issue preclusion may be applicable in dischargeability actions in the bankruptcy court. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Brown,* 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10; *Wheeler v. Laudani,* 783 F.2d 610 (6th Cir.1986); *Spilman,* 656 F.2d at 227–28. In determining the applicability of the doctrine of issue preclusion to a dischargeability action, the Sixth Circuit has stated that the bankruptcy court must consider the following factors: 1) whether the precise issues raised in the prior proceeding are the same issues for which preclusion is sought, 2) whether the issues were actually litigated, 3) whether the determination was necessary to the outcome, and 4) whether the prior determination resulted in a valid and final judgment. *Spilman,* 656 F.2d at 228; *see also Jones v. Walters (In re Walters),* 142 B.R. 229, 231–32 (Bankr.S.D.Ohio 1992). To make this determination, the bankruptcy court must examine the entire record of the state proceeding, not just the judgment. *Spilman,* 656 F.2d at 228; *see also Walters,* 142 B.R. at 232.

▇ Additionally, the doctrine of issue preclusion mandates that the evidentiary standard applied in the prior adjudication not be less stringent than the standard required in the dischargeability action. *Walters,* 142 B.R. at 232. The obstacles created by this requirement have been alleviated as a result of the Supreme Court's recent decision in *Grogan v. Garner,* 498 U.S. at 283–85, 111 S.Ct. at 658; *see also BancBoston Mortg. Corp. v. Ledford (In re Ledford),* 970 F.2d 1556, 1558 n. 1 (6th Cir.1992); *Walters,* 142 B.R. at 232. In *Grogan,* the Court held that the burden of proof applicable in dischargeability proceedings is preponderance of the evidence. 498 U.S. at 287–89, 111 S.Ct. at 660. The factors considered for determining the applicability of the doctrine of issue preclusion to a dischargeability action are essentially identical to those considered under state law; however, an important disparity exists. With respect to the second factor enunciated in *Spilman,* the court stated, "[i]f the important issues were not actually litigated in the prior proceeding, *as is the case with a default judgment,* then collateral estoppel does not bar relitigation in the bankruptcy court." 656 F.2d at 228 (emphasis added).

The rationale underlying *Brown* for denying claim preclusion to state court determinations in bankruptcy dischargeability proceedings is equally applicable in denying issue preclusion effect to a state court default judgment. *Ferguson v. Hall (In re Hall),* 95 B.R. 553, 556 (Bankr.E.D.Tenn. 1989). *See also Pizza Palace, Inc. v. Stiles (In re Stiles),* 118 B.R. 81, 85 (Bankr. W.D.Tenn.1990). As the court in *Hall* stated:

> The problem with giving collateral estoppel effect to a default judgment is that it has the effect of forcing a defendant to litigate in the state court not to disprove the plaintiff's claim on the merits but specifically to preserve the question of dischargeability in bankruptcy.

The problem is equivalent to the problem in *Brown v. Felsen.* The creditor, rather than the debtor, is arguing for giving effect to prebankruptcy judgments in such a way that debtors are *required* to litigate before bankruptcy in order to preserve the question of dischargeability of the alleged debt. Requiring either the debtor or the creditor to litigate before bankruptcy in order to preserve the question of dischargeability of the alleged debt is contrary to the policy of the bankruptcy laws as pointed out in *Brown v. Felsen.*

95 B.R. at 557–58 (emphasis in original). Additionally, it has been noted:

It is certainly true that preclusion of an otherwise just result by the conclusive effect of collateral estoppel is more difficult to justify when the preclusion could not reasonably have been foreseen by the concluded party than when it could have been. Justice, then, is probably better served if the principle of collateral estoppel does not apply to unlitigated issues underlying default or consent judgments, or to issues determined by the parties, unless it can be said that the parties could reasonably have foreseen the conclusive effect of their actions.

J. Moore, 1B *Moore's Federal Practice,* para. 0.444[1] at 794 (footnotes omitted). *See also Brill v. Dvorak (In re Dvorak),* 118 B.R. 619, 625 (Bankr.N.D.Ill.1990).

■ Based upon the explicit language in *Spilman* and the rationale in the *Brown* decision, this court concludes that in the Sixth Circuit the "actually litigated" factor is not satisfied in the context of dischargeability determinations under § 523(c) if the state court judgments were entered as a result of default.[4] Accordingly, this court concludes that an Ohio state court default judgment cannot be accorded either claim or issue preclusion in a subsequent bankruptcy proceeding alleging causes of action committed to the exclusive jurisdiction of the bankruptcy court under 11 U.S.C. § 523(c).

■ Turning to the issue of summary judgment, based upon the facts established in the transcript of the default hearing,[5] which remain uncontroverted,[6] this court concludes that the pleadings establish that Nationwide is entitled to summary judgment under 11 U.S.C. § 523(a)(6).

Section 523(a)(6), in relevant part, provides:

---

**4.** *Contra Bend v. Eadie (In re Eadie),* 51 B.R. 890, 891–93 (Bankr.E.D.Mich.1985); *Harris v. Byard (In re Byard),* 47 B.R. 700, 704–08 (Bankr. M.D.Tenn.1985). Courts in other circuits, however, give issue preclusive effect to state court default judgments. *See e.g., Kelleran v. Andrijevic,* 825 F.2d 692 (2d Cir.1987) (bankruptcy court could not disregard preclusive effect of state court default judgment which fixed the liability of the debtor to one of his creditors); *Seay v. Greene (In re Greene),* 150 B.R. 282 (Bankr.S.D.Fla.1993); *Fairway Golfview Homes, Inc. v. Kecskes (In re Kecskes),* 136 B.R. 578 (Bankr.S.D.Fla.1992); *Perino v. Cohen (In re Cohen),* 92 B.R. 54 (Bankr.S.D.N.Y.1988).

**5.** Courts are not restricted to considering "depositions, answers to interrogatories, and admissions" as set forth in the summary judgment rule. Testimony elicited at a prior hearing may be utilized in determining motions for summary judgment. *See Cash Inn of Dade, Inc. v. Metro. Dade County,* 938 F.2d 1239, 1243 (11th Cir. 1991); *In re Dooley,* 116 B.R. 573, 576–77 (Bankr.S.D.Ohio 1990); *Pillsbury Co. v. FCX, Inc. (In re FCX, Inc.),* 62 B.R. 315, 320 (Bankr. E.D.N.C.1986); J. Moore, 6 *Moore's Federal Practice,* para. 56.11[8] at 56–156 n. 12.

**6.** In his response to Nationwide's motion for summary judgment, Hale stated that he "largely agrees with plaintiff's recitation of the chronology in the within case, but represents that his agency as a bailee for hire terminated when he had transported plaintiff's insured's tractor from the Kenton County, Kentucky, Sheriff's Department to his place of business, probably during September, October, or early November, 1990. Although the tractor remained at defendant's place of business, defendant was not, in fact, plaintiff's agent in securing bids for the tractor for plaintiff, as evidenced by the fact that defendant himself submitted a blind bid to plaintiff. There is no suggestion the bidding was rigged, or that defendant was aware of the amounts of competing submitted bids." (Doc. 12–1).

Hale's statements are insufficient to place any material facts in dispute under summary judgment standards. Hale did not submit any opposing affidavits, depositions, or any documents in opposition to Nationwide's motion for summary judgment.

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

....

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

In interpreting § 523(a)(6), the Sixth Circuit has stated:

An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite, or ill-will. The word "willful" means "deliberate or intentional," a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

*Perkins v. Scharffe,* 817 F.2d 392, 394 (6th Cir.1987), *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987). The Sixth Circuit rejected the stricter standard that "willful" and "malicious" requires an act with intent to cause injury. *Vulcan Coals, Inc. v. Howard,* 946 F.2d 1226, 1229 (6th Cir.1991).

■ It remains uncontradicted that Hale retained the funds from his sale of the tractor which belonged to Nationwide. Hale's actions were willful; his conduct was deliberate and intentional. Additionally, by failing to remit payment to Nationwide, Hale's conduct was wrongful and without just cause and caused injury to Nationwide; thus, Hale's conduct was malicious. Hale's conduct caused a willful and malicious injury to Nationwide.

Hale does not dispute that Nationwide is entitled to summary judgment with respect to the actual damage portion of the judgment awarded Nationwide.[7] Hale does dispute, however, that Nationwide is entitled to summary judgment with respect to the punitive damage portion award of the state court judgment.

In determining whether punitive damages are nondischargeable under § 523(a)(6), courts are directed by "the fundamental canon that statutory interpretation begins with the language of the statute itself." *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990). Section 101(12) defines "debt" as a "liability on a claim." Section 101(5), in relevant part, defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A). The Supreme Court has stated:

As is apparent, Congress chose expansive language in both definitions [the Code's definitions of "claim" and "debt"] relevant to this case. For example, to the extent the phrase "right to payment" is modified in the statute, the modifying language ("whether or not such right is ...") reflects Congress' broad rather than restrictive view of the class of obligations that qualify as a "claim" giving rise to a "debt." See also H.R.Rep. No. 95–595, *supra,* at 309, U.S.Code Cong. & Admin.News 1978, p. 6266 (describing definition of "claim" as "broadest possible" and noting that Code "contemplates that all legal obligations of the debtor ... will be able to be dealt with in the bankruptcy case"); accord S.Rep. No. 95–989, *supra,* at 22, U.S.Code Cong. & Admin.News 1978, p. 5808.

*Davenport,* 495 U.S. at 558, 110 S.Ct. at 2130. *See also Britton v. Price (In re Britton),* 950 F.2d 602, 606 (9th Cir.1991);

---

**7.** Hale stated that he "was suffering massive cash flow problems, but the record is totally devoid of any suggestion that defendant had seized upon a scheme of criminal or civil fraud for his own personal gain, at plaintiff's expense. Rather, by the time plaintiff demanded payment, defendant was unable to tender. The failure to tender may be attributable to stupidity and negligence, but is not attributable to arti-fice, scheme, and design." (Doc. 12–1). Hale, however, in a Supplemental Memorandum Of Defendant, Charles Russell Hale (Doc. 16–1) stated, "Plaintiff [Nationwide] is undisputably entitled to summary judgment on the amount of its contractual sales price, or $12,050.00 less partial payment received by extension of defendants' [sic] services and advancements of $150.00, or a net sum of $11,900.00."

*Placer U.S., Inc. v. Dahlstrom (In re Dahlstrom),* 129 B.R. 240 (Bankr.D.Utah 1991).

Considering the broad definition of "debt" and the plain meaning of the language contained in § 523(a)(6), this court concludes that a "debt" held to be nondischargeable under § 523(a)(6) includes punitive damage awards.[8] *Dahlstrom,* 129 B.R. at 242. "The exception [to discharge contained in § 523(a)(6)] is measured by the nature of the act, *i.e.,* whether it was one which caused willful and malicious injuries. *All liabilities resulting therefrom are nondischargeable." Moraes v. Adams (In re Adams),* 761 F.2d 1422, 1428 (emphasis added in *Adams;* quoting *Coen v. Zick,* 458 F.2d 326, 329–30 (9th Cir.1972)). *See also Britton,* 950 F.2d at 606; *Johnson v. Miera (In re Miera),* 926 F.2d 741, 745 (8th Cir.1991) ("this section does not distinguish between debts which are compensatory in nature and those which are punitive. The language of section 523(a)(6) is directed at the nature of the conduct which gives rise to the debt, rather than the nature of the debt"); *Stokes v. Ferris,* 150 B.R. 388 (W.D.Tex.1992) (under § 523(a)(6) "all debts including statutory damages and legal fees, which flow from the debtor's willful and malicious conduct are nondischargeable."). 150 B.R. at 393.

In the instant case the award of punitive damages and interest are a component of the state court determined liabilities which resulted from the willful and malicious nature of the defendant's conduct. Therefore, this award is nondischargeable. The transcript of the state court hearing, which contains testimony that remains uncontradicted, provides a sufficient basis, pursuant to the summary judgment rule (see fn. 5), for this court to determine, without the need for an evidentiary hearing, that the amount of punitive damages equals the sum of two thousand dollars ($2,000).

Accordingly, the Motion Of Plaintiff Nationwide Mutual Fire Insurance Company For Summary Judgment (Doc. 10–1) is **GRANTED** and the nondischargeable debt is determined to be the amount of the bid price of twelve thousand fifty dollars ($12,050), less Hale's expenses of one hundred fifty dollars ($150), plus two thousand dollars ($2,000) in punitive damages for a total of thirteen thousand nine hundred dollars ($13,900) plus interest and costs set forth in the state court judgment.

An order in accordance with this decision is simultaneously entered.

**SO ORDERED.**

---

8. This court notes that it recently held that punitive damages are not nondischargeable under § 523(a)(2). *Star Bank v. Reveal (In re Reveal),* 148 B.R. 288, 293 (Bankr.S.D.Ohio 1992). As determined in *Reveal,* the language contained in § 523(a)(2) limits nondischargeability by restricting the expansive definition of "debt" to include only the portion of a debt "to the extent obtained by" false pretenses, a false representation, or actual fraud.