**In re George R. RECCK, Debtor.**

**Mark E. TULIN, Plaintiff,**

**v.**

**George R. RECCK, Defendant.**

**Bankruptcy No. 93–61283.
Adv. No. 93–6237.**

United States Bankruptcy Court,
N.D. Ohio.

March 30, 1994.

Christopher J. Niekamp, Akron, OH, for plaintiff.

Douglas L. Thrush, Mansfield, OH, for debtor/defendant.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

Before the court is a motion for summary judgment filed on December 10, 1993, by the plaintiff Mark E. Tulin (Tulin). The defendant, George R. Recck (Recck), had not obtained counsel at that time. Recck did secure the assistance of counsel who was granted leave until February 24, 1994, to file necessary papers. On February 22, 1994, Recck, through counsel, responded to Tulin's motion. Tulin responded to Recck's memorandum in opposition and Recck responded in turn to Tulin's filing. The court thereafter took the matter under advisement.

## FACTS

Tulin asks the court to determine the dischargeability of a $2,000,536.15 judgment obtained against Recck. In support of his motion Tulin has supplied his cross claim which was filed against Recck in a state court case in Connecticut, *Nancy J. Alford, et al. v. George R. Recck and Mark E. Tulin,* No. CV–91–0444122 S (filed Sept. 16, 1991), and the judgment rendered in the case. The cross claim included claims for contribution, money owed, fraudulent misrepresentation, breach of fiduciary duty, misappropriation of funds, and an accounting. The judgment in the proceeding states:

> This is to certify that on March 26, 1993, the Superior Court for the State of Connecticut in and for the Judicial District of Hartford/New Britain at New Britain entered final judgment as against George R. Recck and in favor of Mark E. Tulin as follows:

| Damages: | $1,866,318.80 |
|---|---|
| Attorneys' Fees: | $ 134,217.35 |
| Total: | $2,000,536.15 |

> Said judgment was not obtained against Mr. Recck for default of appearance in this matter. No appeal of this judgment has been filed and cross-claimant Mark E. Tulin may have execution for all of such amounts.

Recck has supplied the court with his affidavit setting out the financial transactions which make up the basis of Tulin's claim. Recck lists the transactions as follows:

(a) I executed a promissory note to Mark E. Tulin for $50,000.00 dated May 2, 1990, and payable on June 15, 1990 at 10% interest. (attached and marked exhibit A).

(b) This note was canceled and replaced by another promissory note. (attached and marked exhibit B).

(c) I needed additional capital for the short term and borrowed an additional $100,000.00 on May 17, 1990 from Mark E. Tulin and executed a promissory note payable on or before June 15, 1990. (attached and marked as exhibit C).

(d) I also agreed as part of the conditions of this loan to sell Mark E. Tulin 8% of the

profits. This agreement is signed by myself and Mark E. Tulin. (attached and marked exhibit D).

(e) On June 5, 1990 I needed an additional $50,000.00 for capitalization. I contacted Mark E. Tulin and borrowed an additional $50,000.00 and in return I agreed to give him 40% of the profits in the construction of homes on "Stonebrook Development". (attached and rked [sic] exhibit E).

(f) On June 12, 1990 I borrowed an additional $45,000.00 from Mark E. Tulin.

(g) On June 15, 1990 I needed additional capital to continue the project, therefore I executed a modification agreement and borrowed an additional $50,000.00 and in return I gave him 50% of the profit from the construction of homes and 43% in other related developments known as Patton, Silhouette Farm One and Silhouette Farm Two. (attached and marked exhibit F).

(h) On June 25, 1990 I borrowed an additional $200,000.00 and executed an additional promissory note payable by July 15, 1990. (attached and marked exhibit G).

(i) On July 5, 1990 I borrowed an additional $50,000.00 and executed an additional promissory note payable by July 15, 1990. (attached and marked exhibit H).

Recck further asserts that the project was appraised at $20,400,000.00 on February 8, 1990, and that "to the best of [his] knowledge ... [he] did not mislead or falsify any of the information concerning the project or the condition of the project." Aff. of George R. Recck at p. 2. Recck continues to assert that he did not embezzle or misappropriate the funds loaned by Tulin and that he was willing at any time to furnish an accounting to Tulin. *Id.* at p. 3. Tulin has not rebutted any of Recck's statements.

### DISCUSSION

The court has jurisdiction in this adversary proceeding by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

Standards on summary judgment under Fed.R.Civ.P. 56, are made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7056. Rule 56 provides for a grant of summary judgment as follows:

(c) The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party seeking summary judgment bears the initial burden of asserting that the pleadings, depositions, answers to interrogatories, admissions and affidavits establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). The ultimate burden of demonstrating the existence of a genuine issue of material fact, however, lies with the nonmoving party. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. *See also, First National Bank v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" F.R.Civ.Proc. 56(e) (emphasis added).... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations and footnotes omitted).

Tulin's complaint is based upon 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and (a)(6).[1] In his motion, Tulin argues persuasively that he is entitled to judgment because collateral estoppel would be available to him under Connecticut law to bar a relitigation of the issues raised in the first proceeding, citing *Jackson v. Whipple*, 225 Conn. 705, 627 A.2d 374, 378 (1993), and that this court must accord the same treatment to the judgment against Recck.

The United States Supreme Court has held that "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner*, 498 U.S. 279, 285 fn. 11, 111 S.Ct. 654, 658 fn. 11., 112 L.Ed.2d 755 (1991) (citing with approval *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981)).[2] If collateral estoppel is to be used in this case, the court must employ state collateral estoppel principles, because a state court judgment is sought to be used for its collateral estoppel effect, unless an exception to 28 U.S.C. § 1738 [3] is present. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (exclusive federal jurisdiction case holding that state law on res judicata applied and implying the same with regard to collateral estoppel).

■ Bankruptcy courts have been granted exclusive jurisdiction with respect to most Section 523 dischargeability actions. *See* Fed.R.Bankr.P. 4007, 7001(6); 28 U.S.C. § 1471; *but see, Rosenbaum v. Cummings*, 150 B.R. 994 (E.D.Tenn.1993) (res judicata

allowed in dischargeability case due to concurrent jurisdiction with regard to discharge of alimony or support obligations). Because, as *Brown v. Felsen, infra*, acknowledged, bankruptcy courts were granted exclusive jurisdiction specifically to remove dischargeability proceedings from state courts, other courts have held that the Bankruptcy Code does contain an exception to 28 U.S.C. § 1738. See *Nationwide Mutual Fire Ins. Co. v. Hale*, 155 B.R. 730, 734–37 (Bankr. S.D.Ohio 1993) (finding that the Bankruptcy Code provides an implied exception to the full faith and credit statute and that collateral estoppel effect could not be given to state court default judgment despite the fact that state law allows it).

Tulin relies primarily on *In re Byard*, 47 B.R. 700 (Bankr.M.D.Tenn.1985), to support his position. The *Byard* court reasons that the Bankruptcy Code does not contain an implied exception to the full faith and credit statute and that *Spilman* is implicitly overruled to that extent. *Id.* at 703–05 (citing to *Marrese, supra; McDonald v. West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); and *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)).

■ ■ This court disagrees with the decision and reasoning of *Byard* and believes that the Bankruptcy Code contains an implied excep-

---

1. (a) a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> . . . . .

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition:

> . . . . .

> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

> . . . . .

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

> . . . . .

2. The Court in *Grogan v. Garner* did not have the question of the use of a state court judgment for collateral estoppel before it. The judgment in *Grogan v. Garner* was taken in the United States District Court for the Western District of Missouri. *In re Garner*, 73 B.R. 26, 27 (Bankr. W.D.Mo.1987). Thus, to that extent it is not controlling.

3. The full faith and credit statute provides, in part, that:

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

tion to the full faith and credit statute with regard to dischargeability proceedings over which this court has exclusive jurisdiction. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), which held that res judicata is not available as a defense in dischargeability proceedings, is based in large part on the withdrawal of jurisdiction over dischargeability proceedings from state courts. *Id.* at 134–139, 99 S.Ct. at 2211–2213, 60 L.Ed.2d at 773–76; *see also, Hale,* 155 B.R. at 735–37. The *Hale* court recognized that the problems the Supreme Court associated with the use of res judicata are also present when collateral estoppel is asserted.

> The problem is equivalent to the problem in *Brown v. Felsen.* The creditor, rather than the debtor, is arguing for giving effect to prebankruptcy judgments in such a way that debtors are *required* to litigate before bankruptcy in order to preserve the question of dischargeability of the alleged debt. Requiring either the debtor or the creditor to litigate before bankruptcy in order to preserve the question of dischargeability of the alleged debt is contrary to the policy of the bankruptcy laws as pointed out in *Brown v. Felsen.*

*Hale,* 155 B.R. at 737 (quoting *Ferguson v. Hall,* 95 B.R. 553, 557–58 (Bankr.E.D.Tenn. 1989) (emphasis in original); see also, *In re Levy,* 87 B.R. 107 (Bankr.N.D.Cal.1988) (Section 524 post-discharge injunction case). "When congress expressly identifies an abuse, when it has the constitutional power to correct it, and when as here it exercises that power, then the courts should give the congressional act its full effect." *Levy,* 87 B.R. at 109 (quoting *Matter of McMillan,* 579 F.2d 289, 294 (3d Cir.1978)).

■ Further, it must be shown that it is a virtual certainty that controlling case law has been implicitly overruled. See *In re Higgins,* 159 B.R. 212 (S.D.Ohio 1993). The Supreme Court in *Kremer* stated that "an implied repeal [of 28 U.S.C. § 1738] must ordinarily be evident from the language or operation of a statute." *Kremer,* 456 U.S. at 470, 102 S.Ct. at 1892, 72 L.Ed.2d at 274. In this instance, the Bankruptcy Code confers exclusive jurisdiction on bankruptcy courts to

make the equitable determination regarding the dischargeability of debts. The Supreme Court has held that the mere fact that federal courts have exclusive jurisdiction to provide a federal remedy does not lead to the conclusion that a statute contains an implied exception to the full faith and credit statute. See James W. Moore, 1B Moore's Federal Practice ¶ 0.406[1] pp. III–92 to –93. However, the operation of, and policy behind, the Bankruptcy Code may reasonably be interpreted to provide an exception to 28 U.S.C. § 1738. Additionally, the Sixth Circuit has had an opportunity to revisit this issue after *Marrese, McDonald, Migra,* and *Kremer,* and has not departed from *Spilman. Wheeler v. Laudani,* 783 F.2d 610 (6th Cir.1985); *see also Nourbakhsh v. Gayden,* 162 B.R. 841 (9th Cir. BAP 1994) (Russell, J., dissenting). Thus, the court is not convinced by the *Byard* decision's rationale and does not view *Spilman* as implicitly overruled.

Accordingly, the court finds that an implied exception to the full faith and credit statute exists with respect to dischargeability proceedings over which this court has exclusive jurisdiction, and will apply collateral estoppel as the Sixth Circuit has instructed in *Spilman.*

■ The elements of collateral estoppel set out by the court in *Spilman,* as summarized in *Hale,* are as follows:

> 1) whether the precise issues raised in the prior proceeding are the same issues for which preclusion is sought, 2) whether the issues were actually litigated, 3) whether the determination was necessary to the outcome, and 4) whether the prior determination resulted in a valid and final judgment.

*Hale,* 155 B.R. at 736 (citations omitted). In this instance, Tulin has presented only his cross claim and the judgment entry to the court in support of his motion. This has been found to be insufficient to support collateral estoppel in dischargeability proceedings. See *Spilman,* 656 F.2d at 228; *In re Himowitz,* 162 B.R. 109 (Bankr.D.N.J.1993); *see also, Grogan v. Garner,* 498 U.S. at 281, 111 S.Ct. at 2660–2661, 112 L.Ed.2d at 761. Also, as Recck points out, Tulin has merely a general judgment with no specific factual

findings. Tulin's cross claim contains claims based upon contribution and money owed in addition to claims based upon fraudulent misrepresentation, breach of fiduciary duty, and misappropriation of funds. Absent the submission of the record of the state court proceeding, or other evidence of the foundation for the state court judgment, this court has no basis upon which it may find that the Connecticut state court decision meets the standards set out in *Spilman.*

Accordingly, the court believes that giving collateral estoppel effect to the judgment presented in this case is not in keeping with the Sixth Circuit's instruction and the court finds that Tulin may not use the state court judgment against Recck for its collateral estoppel effect in this proceeding.

■ Having found that the judgment from the state court in New Britain, Connecticut has no collateral estoppel effect in this proceeding, the court must deny Tulin's motion. He has submitted no other evidence in support of his motion and Recck has supplied his uncontroverted affidavit denying that he embezzled or misappropriated funds or that he made any misrepresentations, and stating that the property in which Tulin invested was worth over $20,000,000.00. Accordingly, Tulin's motion for summary judgment will be denied.