In re Shari A. GREENE, Debtor.

Walter Ray SEAY, Plaintiff,

v.

Shari A. GREENE, Defendant.

Bankruptcy No. 91–32812–BKC–RAM.
Adv. No. 92–0076–BKC–RAM–A.

United States Bankruptcy Court,
S.D. Florida.

Jan. 29, 1993.

Sheldon T. Slatkin, Heston & Slatkin, P.A., Coral Springs, FL, for Shari A. Greene.

Jeffrey H. Frank, Levine & Frank, P.A., Palm Beach Gardens, FL, for Walter Ray Seay.

## MEMORANDUM OPINION

ROBERT A. MARK, Bankruptcy Judge.

Plaintiff, Walter Ray Seay, obtained a state court judgment for $748,726.02 against the Defendant Debtor, Shari A. Greene ("Greene").[1] The plaintiff alleges that this judgment is nondischargeable under § 523(a)(2) of the Bankruptcy Code because the judgment was predicated upon the Debtor's fraudulent acts and materially false financial statement. Plaintiff also invokes § 523(a)(6) alleging that the judgment was based on willful and malicious injury by the Debtor.

After reviewing applicable portions of the state court record and considering the arguments of counsel, the Court finds that the judgment is nondischargeable under § 523(a)(2) and (a)(6). The doctrine of collateral estoppel precludes the defendant from relitigating the issues necessary to establish plaintiff's § 523 claims.

## FACTUAL BACKGROUND AND STATE COURT PROCEEDINGS

Plaintiff owned C & S Refrigeration, a Florida corporation engaged in business in Palm Beach County, which plaintiff had built from its inception some 30 years ago. Contemplating retirement, plaintiff sold the business to Greene, receiving $150,000 of the $769,000 purchase price in cash. The $590,000[2] balance was represented by a promissory note. Plaintiff agreed to accept the note based upon Greene's financial statement which represented a net worth of $3.2 million dollars. Of that $3.2 million, $2.2 million consisted of property in which the defendant claimed to have equity. In fact, the defendant did not own that property. Other representations of assets and equity were also false. (See Amended Complaint, paragraphs 24–26). Only $32,000 of the remaining $590,000 balance was paid. Meanwhile, six months after the defendant took over C & S, the company filed for bankruptcy.

On November 20, 1990 Seay filed a multi-count complaint against Greene in the Circuit Court for Palm Beach County, Case No. 90–13419–AN (the "state court case"). The defendant answered and counter-claimed. After plaintiff's motion for summary judgment was denied, the case was set for trial. Defendant's counsel announced at calendar call that defendant would neither defend the case nor prosecute the counterclaims. Circuit Judge Fine ordered that a default be entered against the defendant on Count IV of the complaint—the count that specifically alleged fraud in the inducement of the sale of C & S from the plaintiff to the defendant. Default was entered August 30, 1991.

The state court then conducted a jury trial for the purpose of determining the damages arising from the fraud. The plaintiff requested $586,911 in compensatory damages plus $200,000 in punitive damages. The jury heard evidence and argument and granted both of these requests in their entirety. Judge Fine, pursuant to the verdict on September 3, 1991, entered final judgment for $586,911 in compensatory damages, $80,000 in punitive damages (representing plaintiff's 40 percent share according to Florida Statute 768.73(2)), and $81,815.02 in prejudgment interest, for a

---

1. Although the final judgment in the state court was against both Jonathon T. Greene and Shari A. Greene, the defendant here, Shari Greene, is subject individually to all findings and awards entered in that case. Since only Mrs. Greene is a defendant in this adversary, this opinion will hereinafter refer only to Mrs. Greene in describing the state court case.

2. An additional $29,000 represented the proceeds of a life insurance policy that the defendant was to cash in and pay over to the plaintiff. Plaintiff alleged that defendant pocketed the proceeds (See trial transcript page 28.).

total of $748,726.02. Shortly thereafter, on October 1, 1992, Greene filed her voluntary Chapter 7 petition commencing this bankruptcy case. Seay filed this adversary proceeding on January 31, 1992 and filed an Amended Complaint on May 22, 1992.

The Amended Complaint relies entirely on the state court case. Applicable portions of that record were filed in this proceeding including the state court complaint, the order granting default, the transcript of the August 30, 1991 trial on damages and the final judgment entered on the jury's award.

## DISCUSSION

Plaintiff argues that the doctrine of collateral estoppel precludes relitigating issues determined by the state court. He contends that the elements of his dischargeability claims in the bankruptcy court were already litigated and determined in his favor in the state court. Defendant claims that collateral estoppel should not be applied arguing that the default judgment does not satisfy the "actually litigated" collateral estoppel element. Defendant also contends that at least the punitive damage award should be discharged.

■ Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit. *In re Kecskes*, 136 B.R. 578 (Bankr.S.D.Fla.1992). The principles of collateral estoppel may be applied to foreclose a relitigation of facts in a dischargeability proceeding. *In re Latch*, 820 F.2d 1163 (11th Cir.1987); *In re Held*, 734 F.2d 628 (11th Cir.1984).

■ In considering the preclusive effect of the prior Florida judgment, the Court must apply the collateral estoppel law of Florida. *Johnson v. Keene*, 135 B.R. 162 (Bankr.S.D.Fla.1991); *See also In re Feldstein*, 93 B.R. 272 (Bankr.M.D.Fla.1988); *Chang v. Daniels (In re Daniels)*, 91 B.R. 981 (Bank.M.D.Fla.1988); *Sciarrone v. Brownlee (Matter of Brownlee)*, 83 B.R. 836 (Bankr.N.D.Ga.1988).

■ The three elements required to give the Florida state court judgment preclusive effect are whether the parties are identical, the issues are identical and the matter has been fully litigated in a court of competent jurisdiction. *Trucking Employees of N. Jersey Welfare Fund, Inc. v. Romano*, 450 So.2d 843 (Fla.1984); *Mobile Oil Corp. v. Shevin*, 354 So.2d 372 (Fla.1977); *Universal Construction Co. v. City of Ft. Lauderdale*, 68 So.2d 366 (Fla.1953).

The state court judgment in this case was in favor of the plaintiff Seay and against the defendant Greene. Thus, the identity of parties element is satisfied. The two remaining issues require further analysis. First, in entering the judgment, did the state court necessarily resolve issues identical to the issues which must be decided to sustain a § 523(a)(2) or 523(a)(6) claim? Second, were the issues "actually litigated" since the judgment was entered after a default? As discussed below, both of these questions are answered affirmatively. Thus, the doctrine of collateral estoppel must be applied and plaintiff is entitled to summary judgment.

## IDENTITY OF ISSUES REQUIREMENT

■ The issue of nondischargeability of a debt is exclusively a matter of federal law governed by the terms of the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, ——, 111 S.Ct. 654, 658, 112 L.Ed.2d 755, 763 (1991), citing *Brown v. Felsen*, 442 U.S. 127, 129–130, 136, 99 S.Ct. 2205, 2208–2211, 60 L.Ed.2d 767 (1979). Therefore, the dischargeability of a debt can never be precisely at issue in a non-bankruptcy lawsuit. Nevertheless, a bankruptcy court can and must give collateral estoppel effect to those elements of the non-bankruptcy claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action. *Grogan*, 498 U.S. at ——, 111 S.Ct. at 658, 112 L.Ed. at 763.

Section 523(a)(2)(A) excepts from discharge a debt obtained by false representation or actual fraud. Section 523(a)(2)(B) excepts from discharge debts for money obtained through the use of written state-

ments that are materially false respecting the debtor's financial condition which are reasonably relied upon by the creditor and which are made with the intent to deceive the creditor. In this case, an analysis of the allegations contained in the state court complaint reveals that each element of a § 523(a)(2)(A) claim and § 523(a)(2)(B) claim was established in the state court case.

■ In the Eleventh Circuit, in order to find a debt nondischargeable on the basis of fraud under § 523(a)(2)(A) a creditor must prove by a preponderance of the evidence that (1) the debtor made a false representation with the purpose and intent of deceiving the creditor; (2) that the creditor reasonably relied upon the representation; and (3) that the creditor sustained a loss as a result of the representation. *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir. 1986).

To prove a debt nondischargeable under § 523(a)(2)(B), a creditor must establish that money or credit was obtained by

(B) Use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable ... reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

■ In this case, the only matter before the state court when it entered default was Count IV of the complaint. This Count alleged fraud in the inducement, an allegation grounded partly in defendant's written assertions of her worth which were false and which defendant knew were false. The complaint also alleged that the defendants failed to disclose material facts with the intent of fraudulently inducing the plaintiff to enter into the transaction. (See paragraphs 44, 46 and 47 of the complaint). Plaintiff specifically alleged that he relied on these representations, that he would have never sold his business to the defendant but for the misrepresentations made, and that as a direct result of these misrepresentations, he sustained injuries in the amount awarded in the court's final judg-

ment. The complaint alleged and the court found that each of the element of fraud were met in this case. The compensatory damages awarded by the jury relate solely to this Count, and the court's final judgment relates solely to the verdict. Thus, the state court judgment necessarily determined each element of plaintiff's claims under § 523(a)(2)(A) and (B) and the defendant is collaterally estopped from arguing the dischargeability of the compensatory damages awarded in that case.

## PUNITIVE DAMAGES

In his state court fraud claim against Greene, plaintiff alleged that "defendants' conduct in submitting patently false asset information constitutes *willful* and *wanton* conduct sufficient to support an award of punitive damages." State Court Complaint, Court IV, paragraph 52 (emphasis added). At trial, the state court judge instructed the jury on punitives in part as follows:

If you have determined that the Defendants are liable to the Plaintiff, Mr. Seay, for fraud, you may consider whether to award punitive damages. The purpose of punitive damages is to punish the wrongdoers and deter others from committing similar offenses.

In fixing the amount of punitive damages to be awarded, you should consider the degree of punishment to be inflicted based on the evidence presented in the trial that indicates the extent and the enormity of the wrong as well as any mitigating circumstances.

Transcript of August 30, 1991 trial, page 37.

The jury returned a verdict awarding $200,000 in punitive damages, $80,000 of this amount payable to Seay and $120,000 payable to the State of Florida pursuant to § 768.73(2), Florida Statutes.

Courts are split on whether punitive damages awarded on a fraud claim are nondischargeable. *Compare In re Giangrasso*, 145 B.R. 319 (9th Cir. BAP 1992) (punitive damages are dischargeable under § 523(a)(2)) with *In re Manley*, 135 B.R.

137 (Bankr.N.D.Okl.1992) (punitives may be nondischargeable under 523(a)(2), (4) or (6)).

This Court does not reach the question of whether punitive damages may be nondischargeable under § 523(a)(2) since punitive damages are properly excepted from discharge under § 523(a)(6) if the conduct is willful and malicious. *See e.g. In re Britton*, 950 F.2d 602 (9th Cir.1991); *In re Dahlstrom*, 129 B.R. 240 (Bankr.D.Utah 1991); *See also In re Kecskes*, 136 B.R. at 578. Section 523(a)(6) provides that a Debtor is not discharged from a debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." An act is willful and malicious if it is done with the intention and knowledge that it could harm a cognizable right of another entity. Constructive or implied malice is sufficient to satisfy the malice requirement under § 523(a)(6). *Chrysler Credit Corp. v. Rebham*, 842 F.2d 1257 (11th Cir.1988), *United Bank of Southgate v. Nelson*, 35 B.R. 766 (N.D.Ill.1983); *In re Triggiano*, 132 B.R. 486 (Bankr.M.D.Fla. 1991).

In his state court complaint, plaintiff alleged that Greene's conduct was *willful* and *wanton*. Since the default conclusively established the truth of this allegation, the willfulness element of § 523(a)(6) is obviously satisfied. Neither the allegation in the complaint nor the jury instruction required a finding of malice. Nevertheless, since "wantonness" was conclusively established by the complaint, and the jury determined that a $200,000 punitive damages award was justified, the Court is satisfied that the state court judgment includes a finding of at least implied malice and thus embodies the requisite degree of misconduct to except the punitive damage award from discharge under § 523(a)(6).

## DEFAULT: THE "ACTUALLY LITIGATED" REQUIREMENT

Under Florida law, even a default judgment is to be given full preclusive effect if the defendant had an adequate opportunity to litigate. *Cabinet Craft, Inc. v. A.G. Spanos–Enterprises,*

*Inc.*, 348 So.2d 920 (Fla. 2nd DCA 1977); *Ennis v. Giblin*, 147 Fla. 113, 2 So.2d 382 (1941). *See In re Marsowicz*, 120 B.R. 602 (Bankr.S.D.Fla.1990). In this case, the defendant had full notice and appeared at calendar call to affirmatively and voluntarily choose to neither defend nor prosecute her counterclaims. Prior to this, the defendant had answered and counterclaimed. Even after the default was entered, a full trial was held on the subject of damages, an event the defendant opted out of as well. The jury had to be convinced of the elements of fraud in order to arrive at a damages award and the transcript relates that substantial evidence was produced at the trial. This situation is far from being classified as a pure default. The state court litigation was more than sufficient under Florida law to meet the "actually litigated" test for collateral estoppel purposes. *See Marsowicz*, 120 B.R. at 604. Debtor who, in state court, defaulted and, after subsequent jury trial, had judgment entered against him).

## CONCLUSION

The state court case involved the same parties before the Court in this adversary proceeding. Despite entry of a default the state court case was "actually litigated" as that element is interpreted under controlling Florida law. The issues determined in the state court case conclusively establish the elements of plaintiff's claims here under § 523(a)(2)(A), (a)(2)(B) and § 523(a)(6). Therefore, this Court must give full preclusive effect to the state court judgment and finds the debt of $748,726.02 owed to plaintiff by the debtor/defendant, Shari A. Greene, to be nondischargeable.

A separate judgment will be entered excepting the debt from discharge in accordance with Rules 7058 and 9021, Fed. R.Bankr.P.