In re Jason Lubell ITZLER, Debtor.

Brian Lasky and Marcy
Lasky, Plaintiffs,

v.

Jason Lubell Itzler, Defendant.

No. 97–16887–BKC–RAM.
Adv. No. 97–1313–BKC–RAM–A.

United States Bankruptcy Court,
S.D. Florida,
Miami Division.

Jan. 20, 2000.

Steven M. Stoll, Ft. Lauderdale, FL, for plaintiffs.

Ronald S. Itzler, New York City, for defendant.

## MEMORANDUM OPINION

ROBERT A. MARK, Chief Judge.

Plaintiffs, Brian Lasky and Marcy Lasky ("the Laskys"), on a motion for summary judgment, seek a determination that a state court judgment debt owed by Defendant/Debtor, Jason Lubell Itzler ("Itzler"), is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Plaintiffs' Motion for Summary Judgment presents one narrow and important issue: Is a pure default judgment sufficient to meet the "fully litigated" element for applying collateral estoppel under Florida law?

After reviewing the pleadings, the applicable portions of the state court record and the federal and Florida law on point, the Court finds that summary judgment must be granted. Under Florida law, a pure default judgment is sufficient to trigger collateral estoppel in a subsequent action. Therefore, the Defendant is precluded in bankruptcy court from relitigating whether the Plaintiffs' claim arose from the Defendant's fraudulent conduct.

## FACTUAL AND PROCEDURAL BACKGROUND

This adversary proceeding seeks to except the Laskys' claim against Itzler from discharge under §§ 523(a)(2)(A), (a)(4) or (a)(6) of the Bankruptcy Code. The debt arises from a Final Default Judgment entered in favor of the Laskys and against Itzler in a state court lawsuit, Case Number: 97–3543–CA–23, Circuit Court, Dade County, Florida (the "State Court Case"). Plaintiffs filed their complaint (the "State Court Complaint") against Itzler on February 13, 1997. The two count State Court Complaint alleged breach of a promissory note and fraud in the inducement. Specifically, the Complaint alleged that Itzler induced the Laskys, through fraudulent misrepresentations, into loaning Itzler $200,000. Itzler delivered a promissory note to the Laskys, Itzler defaulted on the note, the Laskys made demand on the note and the Laskys remained unpaid. The relevant fraud allegations in the State Court Complaint are as follows:

36. [A]s inducement to enter into the Note, Itzler falsely represented to the Laskys that he would repay the full $200,000 within 120 days of demand by the Laskys.

37. At the time Itzler made such misrepresentations, he had no intention of

performing in accordance therewith or Itzler made such misrepresentations with the positive intention not to perform them.

38. Itzler made such material misrepresentations with the intention of having the Laskys rely thereupon and with the intention of inducing the Laskys to loan him $200,000 and to enter into the Note.

39. The Laskys justifiably relied on Itzler's misrepresentations of material fact to their detriment.

40. As a direct and proximate result of Itzler's fraud in the inducement, the Laskys have suffered substantial damages.

Itzler failed to respond to the State Court Complaint, and the state court entered a Final Default Judgment against Itzler on May 8, 1997 in the amount of $218,846.22, which was comprised of the principal on the note plus interest and costs. Itzler filed his voluntary petition for Chapter 7 relief in this Court on August 20, 1997. The Laskys filed this adversary complaint on December 24, 1997. On April 24, 1998, the Laskys filed their motion for summary judgment on Count I of the complaint, the § 523(a)(2)(A) claim. On May 12, 1999, Itzler filed a Cross Motion for Summary Judgment on Counts II and III of the complaint, the § 523(a)(4) and (a)(6) claims. Both sides submitted briefs, and the Court held a hearing on the Laskys' motion for summary judgment on May 19, 1998. The Court took the matter under advisement to consider whether a pure default judgment is sufficient to meet the "fully litigated" element for applying collateral estoppel under Florida law.

## DISCUSSION

### I. This Court Must Apply Florida Collateral Estoppel Law in Determining the Preclusive Effect of the State Court Judgment

■ The legal issue in this case turns on a choice of law issue. If federal collateral estoppel law is applied, then a pure default judgment, one which arose from no particip ation of the defendant, is insufficient to have a preclusive effect. *See Bush v. Balfour Beatty Bahamas, Ltd.,* 62 F.3d 1319, 1323 (11th Cir.1995) (general federal rule is that a default judgment will not ordinarily support the application of collateral estoppel). However, if Florida collateral estoppel law is applied, then as explained in detail below, a pure default judgment does have preclusive effect.

■ Whether state or federal collateral estoppel law applies to a state court judgment in a bankruptcy dischargeability action has been the subject of much scholarly debate. While the issue may be open in some circuits, the issue is resolved in the Eleventh Circuit. The Eleventh Circuit has expressly held that "[i]f the prior judgment was rendered by a state court, then the collateral estoppel law of the state must be applied to determine the judgment's preclusive effect." *In re St. Laurent,* 991 F.2d 672, 676 (citing *In re Touchstone,* 149 B.R. 721, 725 (Bankr.S.D.Fla. 1993)). This Court is bound by the Eleventh Circuit's pronouncement that state collateral estoppel law applies.

The Court has considered Judge Barry Russell's dissent in *In re Nourbakhsh,* 162 B.R. 841, 847 (9th Cir. BAP 1994) (Russell, J. dissenting), *aff'd,* 67 F.3d 798 (9th Cir. 1995), in which he opined that "28 U.S.C. § 1738 does not require the application of Florida law to determine the preclusion effect of a Florida default judgment in a dischargeability proceeding pursuant to 11 U.S.C. § 523(a)(2), (4) and (6)." Judge Russell also argued that the Eleventh Circuit's statement in *St. Laurent* that state collateral estoppel applies to state court judgments was merely *dicta. See Nourbakhsh,* 162 B.R. at 847 n. 1. Judge Russell's view was later echoed in an exhaustive decision by Judge Benjamin Cohen, *In re Wald,* 208 B.R. 516 (Bankr.N.D.Ala. 1997). Judge Russell and Judge Cohen argue that *St. Laurent's* choice of law pronouncement was mere *dicta* because the Eleventh Circuit was not faced with a default judgment situation. *See Wald,* 208

B.R. at 526 n. 16. Judge Russell and Judge Cohen argue that because there had been a full trial in the state court case in *St. Laurent*, the "actually litigated" element of collateral estoppel was not contested; and since federal law matched state law on the other elements of collateral estoppel, there was no tension between federal and state law, and 28 U.S.C. § 1738 was never an issue. *See id.*

The Eleventh Circuit's statement in *St. Laurent*, that state collateral estoppel law applies to state court judgments in bankruptcy, was not *dicta*. There were two steps in the court's analysis—each was integral to the holding. First the court considered whether to apply state or federal collateral estoppel standards. Then it applied Florida collateral estoppel standards to the prior state court judgment to determine its preclusive effect. *See St. Laurent*, 991 F.2d at 677, 681. It is true that the prior state court judgment in *St. Laurent* was entered after a trial and not by default. But why would the nature of the judgment affect the choice of law? A judgment is a judgment, whether resulting from a default or from a trial, for purposes of determining which law applies. There is no reason to believe that the Eleventh Circuit's determination that state collateral estoppel law applies to state court judgments in bankruptcy would change if it was confronted with a default judgment.

Moreover, even if this Court was not bound by the Eleventh Circuit's choice of law holding in *St. Laurent*, this Court would follow its own prior decisions, which applied state collateral estoppel law to determine the preclusive effect of state court judgments in bankruptcy. In *St. Laurent*, the Eleventh Circuit cited this Court's *Touchstone* decision, which relied heavily on an earlier decision of this Court, *In re Keene*, 135 B.R. 162 (Bankr.S.D.Fla.1991). In *Keene*, this Court explained that 28 U.S.C. § 1738 requires federal courts to give full faith and credit to state court judgments, and that under the Supreme Court's holding in *Marrese v. American*

*Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), § 1738 requires federal courts to consider the law of the state in which the judgment was rendered to determine its preclusive effect, unless there is an express exception to § 1738 in the federal statute at issue. *See Keene*, 135 B.R. at 165–66. This Court concluded that there was no exception to § 1738 in the Bankruptcy Code.

In *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Supreme Court held that state court judgments do not have a res judicata effect in dischargeability proceedings in bankruptcy. In so holding, the Supreme Court impliedly found an exception to § 1738 in a res judicata context. *See Keene*, 135 B.R. at 165–66. However, the Supreme Court deliberately left open the question of whether collateral estoppel would apply to dischargeability actions. *See Brown*, 442 U.S. at 139, n. 10, 99 S.Ct. 2205. Later, in *Grogan v. Garner*, 498 U.S. 279, 284, n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the Supreme Court clarified that "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." In *Keene*, this Court concluded that the Supreme Court's holding in *Grogan* implied that the Bankruptcy Code does not preempt the full faith and credit provisions of 28 U.S.C. § 1738 in collateral estoppel determinations. *See Keene*, 135 B.R. at 166.

The conclusion that state collateral estoppel law applies in dischargeability proceedings in bankruptcy is not only compelled by the Eleventh Circuit's decision in *St. Laurent*. It is also supported by two Circuit Courts of Appeals, one Bankruptcy Appellate Panel and several other bankruptcy decisions. *See In re Nourbakhsh*, 67 F.3d 798 (9th Cir.1995) ("The bankruptcy court and the BAP properly looked to Florida state law to determine the preclusive effect of the prior default judgment against Nourbakhsh"); *Garner v. Lehrer*, 56 F.3d 677 (5th Cir.1995) ("[T]he judg-

ment in question was entered by a Texas state court .... Accordingly, we apply Texas rules of preclusion"); *In re Nour-bakhsh*, 162 B.R. 841 (9th Cir. BAP 1994), *aff'd*, 67 F.3d 798 (9th Cir.1995) ("The Supreme Court in *Marrese* specifically stated that the full faith and credit statute directs a federal court to refer to the preclusion law of the State in which the judgment was rendered .... Accordingly, only an analysis of Florida's preclusion law is relevant to the outcome in this case"); *In re Marsowicz*, 120 B.R. 602 (Bankr.S.D.Fla.1990); *In re Feldstein*, 93 B.R. 272 (Bankr.M.D.Fla.1988); *In re Daniels*, 91 B.R. 981 (Bankr.M.D.Fla. 1988); *Matter of Brownlee*, 83 B.R. 836 (Bankr.N.D.Ga.1988); *In re Byard*, 47 B.R. 700 (Bankr.M.D.Tenn.1985) (Lundin, J.) ("If Kansas courts would consider the default judgment to preclude relitigation of certain issues then § 1738 would require the bankruptcy court to give full faith and credit to that conclusion").

## II. Elements of Collateral Estoppel Under Florida Law

In applying Florida law, Florida cases control. Under Florida collateral estoppel law, in order for a judgment to have a preclusive effect in a subsequent proceeding, the following elements must be met: 1) the parties are identical in the initial and subsequent actions; 2) the issues are identical in the initial and subsequent actions and 3) the matter has been fully litigated in a court of competent jurisdiction. *See Dep't of Health and Rehabilitative Services v. B.J.M.*, 656 So.2d 906, 910 (Fla.1995); *Mobil Oil Corp. v. Shevin*, 354 So.2d 372 (Fla.1977); *Essenson v. Polo Club Associates*, 688 So.2d 981 (Fla.Dist. Ct.App.1997).

As to the first element, identical parties, there is no dispute. The Plaintiffs and Defendant in this § 523(a) action are the identical parties named in the prior State Court Case. The second element of collateral estoppel, identical issues, is also met in this case. The elements of

§ 523(a)(2)(A) that the Laskys now must prove are: 1) that the debtor made a false representation with the purpose and intent of deceiving the creditor; 2) that the creditor reasonably relied upon the representation and 3) that the creditor sustained a loss as a result of the representation. *See In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986).

In the State Court Complaint, the Laskys alleged the following facts to support their fraud claim under Florida law: 1) that Itzler falsely represented that he would sell a portion of the companies to the Laskys, that he would repay $200,000 within 120 days of demand by the Laskys, and that Itzler had the intention of not performing on the promises, ¶¶ 36–37, State Court Complaint; 2) that the Laskys justifiably relied on Itzler's misrepresentations of material fact to their detriment, ¶ 39, State Court Complaint; and 3) that as a direct and proximate result of Itzler's fraud in the inducement, the Laskys have suffered substantial damages, ¶ 40, State Court Complaint.

The facts alleged in the State Court Complaint precisely match the elements of § 523(a)(2)(A). Therefore, the issues are identical, and the second element of collateral estoppel is met.

## III. A Pure Default Judgment Satisfies the "Fully Litigated" Element of Collateral Estoppel Under Florida Law.

The primary issue in this proceeding is whether the third element of collateral estoppel is met: does the default judgment entered against Itzler in state court constitute a matter that has been "fully litigated" under Florida law. In two prior cases, this Court stated that a default judgment is sufficient to satisfy the "fully litigated" element of collateral estoppel under Florida law. *See In re Greene*, 150 B.R. 282, 287 (Bankr.S.D.Fla.1993); *In re Kecskes*, 136 B.R. 578, 583 (Bankr.S.D.Fla.1992). Those cases, however, were not "pure default" cases. In *Greene*, the defendant

filed an answer and a counterclaim, appeared at calendar call and then announced that he would not defend the case. A default judgment was entered against him as to liability. 150 B.R. at 284. In *Kecskes,* the defendant participated in an evidentiary hearing in the state court; at a subsequent proceeding, the defendant had notice but chose not to appear, and the state court entered a default judgment against him. 136 B.R. at 580.

In both *Kecskes* and *Greene,* the defendants participated in the case to some degree. By contrast, Itzler filed no papers in response to the Plaintiffs' State Court Complaint, and he never appeared in the State Court Case. The issue here is not simply whether some default judgments can satisfy the fully litigated element of collateral estoppel, but rather, whether a "pure" default judgment, where the defendant did not participate in any manner, "fully litigates" the issues in the case under Florida law.

### A. Florida Cases

A cursory review of the often cited Florida cases reveals what appears to be clear language on the issue. "The law is clear that a default judgment conclusively establishes between the parties, so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action and every fact necessary to uphold the default judgment." *Perez v. Rodriguez,* 349 So.2d 826, 827 (Fla.Dist.Ct. App.1977). Further, "for purposes of res judicata, a judgment entered upon default is just as conclusive as one which was hotly contested." *Cabinet Craft, Inc. v. A.G. Spanos Enterprises, Inc.,* 348 So.2d 920 (Fla.Dist.Ct.App.1977). Applying these two principles to the facts before this Court would be straightforward. By entering the Default Final Judgment against Itzler in the State Court Case, the state court conclusively found all material allegations of the Laskys' complaint to be true. Since fraud was pled in the complaint, fraud was conclusively established, and Itzler may not relitigate the issue under § 523(a)(2)(A).

Upon closer examination, however, Florida law is not quite as clear as *Perez* makes it seem. Judge Russell, in his dissent in *Nourbakhsh,* points out that the often-quoted language in *Perez* is merely *dicta,* since *Perez* actually held that res judicata did not apply to bar a subsequent suit. *See Nourbakhsh,* 162 B.R. at 848 n. 2. Judge Russell argues that courts should not apply res judicata cases to issues of collateral estoppel. *See id.* This Court agrees in part with Judge Russell's critique: the language in *Perez* is *dicta,* and *Perez* and *Cabinet Craft* were res judicata cases. Nevertheless, these case are still instructive in determining the preclusive effect a Florida court would give a pure default judgment in a collateral estoppel context, since they indicate the significant weight afforded default judgments under Florida law.

If the only relevant Florida cases were res judicata cases, the preclusive effect of a pure default judgment, for purposes of applying collateral estoppel, would be in doubt. That is not the state of the law in Florida. Rather, there are two Florida Supreme Court cases which *held* that collateral estoppel applied to pure default judgments. *See Masciarelli v. Maco Supply Corp.,* 224 So.2d 329 (Fla.1969); *Avant v. Hammond Jones, Inc.,* 79 So.2d 423 (Fla.1955).

In *Avant,* the initial cause of action was a replevin action brought by Hammond Jones, Inc. ("Hammond") against Avant. Hammond sought to recover eight trucks that it had sold Avant and that Avant had not paid for. Avant did not answer or participate in any manner, and a default judgment was entered against him. In a second suit, Avant sued Hammond for trover and conversion, alleging that when Hammond repossessed the trucks, Avant's spreaders were attached to them. The court held that the doctrine of "estoppel by judgment" barred Avant from litigating in

the second suit, when he suffered a default judgment against him in the first suit. *See Avant,* 79 So.2d at 423–24.

■ Although the court used the term "estoppel by judgment," under Florida law, the terms "estoppel by judgment" and "collateral estoppel" are synonymous. *See Starr Tyme, Inc. v. Cohen,* 659 So.2d 1064 (Fla.1995) (citing *Stogniew v. McQueen,* 656 So.2d 917 (Fla.1995) ("Collateral estoppel, which is also known as estoppel by judgment, serves as a bar to relitigation of issues that have been determined by a valid judgment.")).

The court in *Avant* was careful to distinguish estoppel by judgment from res judicata. In fact, the court specifically noted that the lower court erred in barring Avant's second suit on res judicata grounds, explaining that the proper reason for barring the suit was estoppel by judgment:

> Res judicata bar[s] a later suit between the same parties upon the same cause of action, the first adjudication being final as to matters that were or could have been presented, while estoppel by judgment would be applied to prevent a party from re-litigating questions common to two causes of action when those questions were actually decided in the first.

*Avant,* 79 So.2d at 423–24.

The court explained that there was "a difference in causes of action ... [b]ut there was a point common to both actions which we believe was actually determined for all practical purposes." *Id.* at 424. Avant's claim in the trover action, that his personal property should have been separated from the trucks before the trucks were repossessed, was a different cause of action, but the prior replevin judgment in favor of Hammond conclusively determined Hammond's right to possession of the trucks with the spreaders attached. *See id.* Thus *Avant* was an issue preclusion (collateral estoppel) case—not a claim preclusion (res judicata) case.

In *Masciarelli v. Maco Supply Corp.,* the initial cause of action was a replevin action brought by Maco against Masciarelli for failing to pay for billiard equipment. 224 So.2d at 330. Masciarelli did not answer or participate in any way, and a default judgment was entered against him. In a second action, Masciarelli sued Maco for breach of warranty (failure to repair equipment), breach of an oral agreement to repair the equipment and malicious interference with Masciarelli's business. The Florida Supreme Court held that the second action was barred by estoppel by judgment:

> The right of possession was determined by the replevin action and the doctrine of estoppel by judgment negates re-litigation of that *issue.* Having failed to defend upon whatever ground was then available and having permitted replevin by default, petitioner may not now be heard on his proffer of an oral agreement in Count II to vary the terms of the written contract.

*Masciarelli v. Maco Supply Corp.,* 224 So.2d at 330 (emphasis added).

Judge Russell, in his dissent in *Nourbakhsh,* closely scrutinized the *Avant* and *Masciarelli* decisions. *See Nourbakhsh,* 162 B.R. at 848 n. 2. Judge Russell argues that the Florida courts confuse the doctrines of res judicata and collateral estoppel and that the *Avant* and *Masciarelli* decisions were actually res judicata cases "mislabeled" as collateral estoppel cases.

This Court respectfully disagrees with Judge Russell's analysis of *Avant* and *Masciarelli.* In *Masciarelli,* the Florida Supreme Court was faced squarely with the issue of whether res judicata or estoppel by judgment applied. The court specifically held, relying on *Avant,* that estoppel by judgment applied. *See Masciarelli,* 224 So.2d at 330. In *Avant,* the Florida Supreme Court carefully and explicitly distinguished between the doctrines of res judicata and estoppel by judgment. It noted that estoppel by judgment applies when two different causes of action encom-

pass a common issue, and it criticized the lower court for applying res judicata in the context of two different causes of action. In short, the Florida Supreme Court has proven itself quite capable of distinguishing between res judicata and collateral estoppel:

> A great many courts and text book writers treat 'res adjudicata' and 'estoppel by judgment' as synonymous. The most erudite legal minds appear to have difficulty in stating the difference which they consider to exist between them.... The difference which we consider exists between res adjudicata and estoppel by judgment i[s] that under res adjudicata a final decree of judgment bars a subsequent suit between the same parties based upon the same cause of action and is conclusive as to all matters germane thereto that were or could have been raised, while the principal of estoppel by judgment is applicable where two causes of action are different, in which case the judgment in the first suit only estops the parties from litigating in the second suit issues—that is to say points and questions—common to both causes of action and which were actually adjudicated in the prior litigation.

*Gordon v. Gordon,* 59 So.2d 40, 44 (Fla. 1952), *cited with approval in Avant,* 79 So.2d at 224.

As discussed earlier, under 28 U.S.C. § 1738 and the United States Supreme Court's decision in *Marrese,* bankruptcy courts are required to apply state collateral estoppel law in dischargeability actions. This Court would not be giving full faith and credit to the Florida law of collateral estoppel if it assumed that the Florida Supreme Court was confused when it specifically held that it was applying collateral estoppel in *Avant* and *Masciarelli.* The bottom line is this: in *Avant* and *Masciarelli,* the Florida Supreme Court held that collateral estoppel may be applied even where the prior case is resolved by a pure default judgment.

**B. Federal Cases Interpreting Florida Law**

The Court has also reviewed federal cases interpreting Florida law. Only a Supreme Court or Eleventh Circuit holding would be binding precedent, and neither court has issued an opinion on point. In fact, in *Bush,* 62 F.3d at 1323 n. 6, the Eleventh Circuit expressly declined to reach the issue of whether a Florida default judgment should be accorded preclusive effect in a bankruptcy dischargeability proceeding.

Other federal decisions interpreting Florida law are not binding. Nevertheless, it is still useful to note that no federal court has found a default judgment insufficient to apply collateral estoppel under Florida law, while several federal cases interpreting Florida law have concluded that default judgments satisfy the "fully litigated" element.

This opinion has repeatedly referred to Judge Russell's dissent in *Nourbakhsh.* 162 B.R. at 848 n. 2. The majority in *Nourbakhsh,* however, disagreed with Judge Russell and held that under Florida law, the prior default judgment collaterally estopped the debtor in a subsequent dischargeability proceeding. 162 B.R. at 846–47. The Ninth Circuit affirmed. 67 F.3d 798. Other federal decisions have also found Florida default judgments sufficient to apply collateral estoppel. *See In re Arguez,* 134 B.R. 55 (Bankr.S.D.Fla. 1991) (Collateral estoppel applied to state court default judgment, establishing § 523(a)(2)(A) and (a)(6) claims on summary judgment; defendant participated to some extent in state court litigation); *In re Heuser,* 127 B.R. 895 (Bankr.N.D.Fla. 1991) (Plaintiff prevailed on § 523(a)(2), (a)(4) & (a)(6) claims at summary judgment stage; collateral estoppel applied to state court default judgment); *In re Marsowicz,* 120 B.R. 602 (Bankr.S.D.Fla.1990) (Collateral estoppel precluded litigation of § 523(a)(2) and (a)(4) claims where default judgment had been entered against defen-

554

dant in state court and defendant had no participation in state court litigation).

## C. Application of Florida Collateral Estoppel Law

 Accepting *Avant* and *Masciarelli* as the controlling Florida law on the collateral estoppel effect of a pure default judgment, applying the law to the facts of this case is straightforward. Under *Avant* and *Masciarelli*, even a pure default, where there is no participation by the defendant, triggers collateral estoppel. Thus a pure default satisfies the "fully litigated" element of collateral estoppel under Florida law. The fact that Itzler did not participate at all in the state court action does not change the fact that the issue of fraud was "fully litigated" under Florida collateral estoppel principles. The *dicta* in *Perez* persuades this Court that every allegation in the state court complaint, including the Laskys' fraud claim, was conclusively established as true by entry of the default judgment. *See Perez,* 349 So.2d at 827. Collateral estoppel, under Florida law, prevents Itzler from relitigating the truth of the allegations of fraud. Applying collateral estoppel to the state court default judgment, this Court holds that the debt owed by Itzler to the Laskys is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## IV. Itzler's Challenge to the Sufficiency of Service of Process is not Properly Before this Court

One separate argument by the Defendant warrants brief discussion. Itzler argues in his summary judgment papers that he was never served with the State Court Complaint nor any other paper in the State Court Case, and that he therefore had no opportunity to litigate. In the alternative, Itzler argues that he was under medical care for severe depression from September of 1996 through March of 1997, that he was living in New York during the same time period (the complaint was filed on February 13, 1997), and

that he was so mentally incapacitated that he was unable to defend himself or participate in any litigation.

 This Court may not and will not address the question of whether Itzler was served. By entering a default final judgment, the state court necessarily determined that service was effectuated. It is not the role of this Court to relitigate that issue. The proper place for review of any aspect of the state court judgment, including the sufficiency of process, is the state court, not the federal bankruptcy court.

 If this Court was to explore the question of whether or not Itzler was served, it would be effectively reviewing the correctness of the state court's decision to enter a default final judgment. "According to the Rooker–Feldman doctrine, 'a United States District Court has no authority to review final judgments of a state court in judicial proceedings.'" *Powell v. Powell,* 80 F.3d 464, 466 (11th Cir.1996) (citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). The Rooker–Feldman doctrine prevents Itzler from "recast[ing] his claim and thereby obtain[ing] collateral review in federal court of the state court decision." *Jones v. Crosby,* 137 F.3d 1279, 1280 (11th Cir.1998). In sum, this Court will not review the grounds for the state court's entry of the default judgment against Itzler.

## V. Conclusion

The Court recognizes that its decision highlights an apparent inconsistency in the application of collateral estoppel in dischargeability proceedings. If the Laskys had obtained a pure default judgment against Itzler in federal court, collateral estoppel would not have barred Itzler from relitigating the fraud claim here. Because the prior judgment was entered in the state court, Itzler is collaterally estopped, since 1) Florida collateral estoppel law applies and 2) under Florida law, pure de-

fault judgments have preclusive effect. This is the required outcome unless and until the Eleventh Circuit reconsiders the choice of law issue or the Florida Supreme Court revisits the preclusive effect of a default judgment.

In sum, under Florida law, even a pure default judgment, which arose from no participation of the defendant, is sufficient to meet the "fully litigated" element of collateral estoppel. All of the elements of collateral estoppel are met in this case by virtue of the Default Final Judgment entered against Itzler in the State Court Case. Therefore, the $218,846.22 debt owed by Itzler to the Laskys is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). A separate order will be entered granting Plaintiffs' Motion for Summary Judgment on Count I of the Complaint and denying as moot Defendant's Cross Motion for Summary Judgment on Counts II and III of the Complaint. A separate Final Judgment will be entered granting judgment in favor of the Laskys on Count I of the Complaint, excepting the debt from discharge under 11 U.S.C. § 523(a)(2)(A), and dismissing, as moot, Counts II and III of the Complaint.