In re T. June DICKS, Debtor.

Susan Woodard, Chapter 7 Trustee, and Mercantile Bank, f/k/a Central Bank of Tampa, Plaintiffs,

v.

T. June Dicks, Thomas P. Lypka, Donald Dicks, and Cheryl Dicks-Clark, Defendants.

Bankruptcy No. 8:00–BK–02653–MGW.

Adversary No. 8:04–AP–00069.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 16, 2004.

Curran K. Porto, Curran K. Porto PA, Tampa, FL, for trustee.

Peter R. Weisz, Weisz & Associates, Atlanta, GA, for Mercantile Bank.

Susan K. Woodard, St. Petersburg, FL, trustee.

## *PRELIMINARY INJUNCTION*

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

This Court has inherent authority to enjoin vexatious litigation by litigants who have settled on a course of conduct involving the repetitive filing of duplicative legal papers rearguing a position rejected a multitude of times by numerous trial and appellate courts, where such litigation causes needless expense to other parties, where the litigants have no objective, good-faith expectation of prevailing, and where the multiple filings place an unnecessary burden on the courts. *Ray v. Lowder*, Order Granting Injunctive Relief and Directing the Entry of Judgment, Case No. 5:02–cv–316–Oc–10GRJ (M.D.Fla. Sept. 18, 2003)(W. Terrell Hodges, D.J., adopting Report and Recommendation reported at *Ray v. Lowder*, 2003 WL 22384806 (M.D.Fla. Aug. 29, 2003)(Jones, Mag. J.)) (*citing, inter alia, In re Martin–Trigona*, 737 F.2d 1254, 1262 (2nd Cir.1984)("*Martin–Trigona*")). The history of the litigation involving the plaintiffs and defendants, principally Mercantile Bank f/k/a Central Bank of Tampa ("Bank"), and the debtor, T. June Dicks ("Dicks"), falls squarely within the type of conduct that *Martin–Trigona* injunctions are designed to prevent. Accordingly, the Court will enter a preliminary injunction directed against each of these defendants enjoining them from continuing this course of conduct subject to the terms and for the reasons set forth below.

## Procedural History

This case came on for hearing on February 20, 2004, on the Bank's and chapter 7 trustee's ("Trustee") motion to enjoin pro se vexatious filings filed in the chapter 7 case (Doc. No. 296) and motion for preliminary injunction filed in this adversary proceeding (Doc. No. 2)(collectively, the "Injunction Motion"). The Bank holds a judgment entered in the Circuit Court for Hillsborough County, Florida, on April 29, 1993, against Dicks in the amount of $607,526.30 inclusive of interest through the date of the petition commencing this case ("Judgment").

The Injunction Motion is directed against Dicks; her husband, Donald Dicks ("Donald Dicks"); her daughter, Cheryl Dicks–Clark ("Dicks–Clark"); and her brother, Thomas P. Lypka ("Lypka").[1] Dicks–Clark and Lypka are parties to adversary proceedings that were brought and litigated in this Court by the Trustee, resulting in adverse judgments being entered against them.[2]

For purposes of the Court's determination of the Injunction Motion, the Court considers the record to include all of the exhibits that were also considered at the trial that took place in this Court in connection with adversary proceeding number 00–224 that was filed by Dicks at the beginning of this case. In the adversary proceeding, Dicks challenged the validity of the Judgment. This Court entered judgment against Dicks in the adversary, finding that the Judgment must be afforded full faith and credit by this Court under the authority of the Full Faith and Credit Act[3] and under the *Rooker–Feldman* Doctrine.[4] In addition, this Court will consid-

1. Service of the Injunction Motion and the notice of hearing on the Injunction Motion was properly effected on the defendants in compliance with Fed. R. Bankr.Proc. 7004(b)(1) by mailing copies to them at the residential addresses they have used throughout this case—which in Dicks' case is also the address shown in the petition. *See* Fed. R. Bankr.Proc. 7004(b)(9).

2. Adv. Pro. 01–466 and Adv. Pro. 01–467. The adversary proceedings were brought under 11 U.S.C. § 547 (preferential transfers) and resulted in monetary judgments being entered against both Dicks Clark and Lypka.

3. 28 U.S.C. § 1738. Under this statute, "... judicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken. This statute commands that a federal court must accord a state court judgment the same preclusive effect it would be accorded by the rendering state." *In re Keene*, 135 B.R. 162 (Bankr.S.D.Fla.1991) citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). *Moore's Federal Practice ("Moore's")* § 133.30[1] at 133–20 (2003). The Eleventh Circuit in *In re St. Laurent*, 991 F.2d 672, 676 (11th Cir.1993),

has expressly stated that, "If the prior judgment was rendered by a state court, then the collateral estoppel law of the state must be applied to determine the judgment's preclusive effect." See also *In re Itzler*, 247 B.R. 546, 548 (Bankr.S.D.Fla.2000). Thus, the first question a federal court must address in determining whether relitigation is appropriate is whether the claim would be precluded under state preclusion law. *Moore's* § 133.30[2] at 133–22 (citing *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). The statute requires all federal courts to give preclusive effect to state court judgments whenever the courts of the state in which the judgments were rendered would do so. *Pelletier v. Zweifel*, 921 F.2d 1465, 1501 (11th Cir.1991) (citing *Allen v. McCurry*, 449 U.S. 90, 96, 101, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).

4. The *Rooker–Feldman* Doctrine is a judge-made doctrine establishing the principle that the lower federal courts have no jurisdiction to review state court judgments. *Moore's* § 133.30[3][a] at 133–23. It derives from two U.S. Supreme Court cases—*Rooker v. Fidelity Trust*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is

er as part of the record all of the various papers that Dicks has filed with this Court over the many months, in fact years, that this case has proceeded.

The Court will also consider as part of the record all of the state court-generated papers, judgments, and orders that have been entered by a number of other courts that have dealt with these matters from 1993 when the Judgment was first entered, to most recently, the Order Denying Motion To Vacate entered January 20, 2004, by the Honorable Vivian C. Maye, Circuit Judge for Hillsborough County, Florida, in which she disposed of Dicks' most recent attack on the validity of the Judgment. All of these papers are matters of public record and have been either introduced in evidence in this Court or are attached to the filings that have been made in this Court by the Bank, Trustee, or Dicks.

### Debtor's Repeated Contention that the Judgment is Void

In a multitude of papers filed in this Court and others, Dicks takes the position that the Judgment is "void *ab initio*" because it was entered in violation of her due process notice rights. The procedural history relevant to this claim is as follows:

On April 29, 1993, the Honorable Guy W. Spicola, Circuit Judge for Hillsborough County, entered an order finding that Dicks had willfully failed to appear for a pre-trial conference with respect to a proceeding to determine the deficiency judg-

ment in connection with a foreclosure judgment that had previously been entered against her. The Judgment was thereupon entered against her. A motion for rehearing filed by Dicks was also denied because she failed to appear at the rehearing. No appeal was filed by Dicks with respect to the Judgment.

In the years that followed, the Bank undertook collection efforts. In 1997, as part of this process, the Bank domesticated the Judgment in the State of Georgia where Dicks currently resides. In addition to domesticating the judgment in Georgia, the Georgia court entered a second judgment against Dicks for sanctions, finding that Dicks "displayed a lack of candor in post-judgment discovery proceedings." Order of February 5, 1997, by the Honorable Robert E. Flournoy, Jr., Superior Court Judge, Cobb County, Georgia, Case No. 93-1-8778-22.

The Bank also commenced proceedings supplementary in Monroe County, Florida, in order to levy and execute against certain real property owned by Dicks. That court entered a third judgment against Dicks as well as her husband, Donald Dicks, for sanctions based on the Special Master's findings that their conduct in the proceeding had been "intentionally evasive and contumacious" and that the proceedings in Monroe County had "been expanded unnecessarily by the conduct of both." [5]

premised on both prudential and statutory grounds. The prudential rationale for the doctrine is the preservation of system consistency. The statutory grounds are: (1) 28 U.S.C. § 1257, which gives the U.S. Supreme Court exclusive federal jurisdiction to review state court judgments, and (2) 28 U.S.C. §§ 1331 and 1334, which define the jurisdiction of the federal district courts as original, not appellate. *Rooker–Feldman*, unlike claims or issue preclusion, is jurisdictional, not waivable, and can be raised sua sponte by the court. "Because a federal court is power-

less to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about the jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir.2001).

**5.** Case No. 97-681-CA-40, filed in Monroe County, Florida.

In 1999, Dicks attempted to set aside the Judgment in the court of its rendition—the Circuit Court for Hillsborough County, Florida.[6] On August 11, 1999, a hearing was held before the Honorable Manuel Menendez, Jr., Circuit Judge, on Dicks' motion to set aside the Judgment. As she has before this Court on numerous occasions, Dicks argued that the Judgment was entered against her without proper notice. In pertinent part, Judge Menendez found that Dicks "did receive proper notice of the hearing" and her contention was without merit.[7] Accordingly, Dicks' motion to set aside the default judgment was denied.[8]

Shortly thereafter, having been unsuccessful in either thwarting the Bank's collection efforts or in having the Judgment set aside, Dicks filed a bankruptcy petition in this Court on February 24, 2000. Soon after the filing of her bankruptcy petition, Dicks filed a separate adversary proceeding in this Court against the Bank seeking, *inter alia*, a determination of the validity of the Bank's Judgment. As discussed above, this Court entered judgment against Dicks in the adversary proceeding, finding that the Bank's Judgment must be afforded full faith and credit by this Court under the authority of both the Full Faith and Credit Act[9] and the *Rooker–Feldman* Doctrine.[10] Notwithstanding this Court's decision in the adversary proceeding, Dicks and her family members (Dicks–Clark and Lypka were named defendants in actions in which judgments were entered against them) continued to raise these issues at every turn even after the adverse judgments.

While not a large case in terms of assets nor particularly complex in terms of issues, this case nevertheless is the oldest pending case before this judge with over 300 court filings to date over a four-year period. The majority of these filings by Dicks, as well as the filings of her brother, Lypka, raise the voidness of the Bank's Judgment. This issue has been raised repeatedly in this and other courts, and at every turn these identical attacks on the Judgment have been unsuccessful. In the last seven months alone, this argument has generated over 30 contested matters or appeals by Dicks, Lypka, or other family members, none of which has been successful and all of which have required a needless expenditure of time by the parties that were brought in and their attorneys. The court systems in the States of Florida and Georgia, in Canada, and recently in the State of California are also involved. In the federal system, they have litigated at all levels, including the bankruptcy court, district court, and the Eleventh Circuit. There are no new or novel theories being expressed in these filings—they simply repeat an old argument.

In addition, the Debtor and her family members may hold the distinction of having filed appeals before all but one of the district judges of this district who serve as the first level of appellate judges for appeals from this Court. None of the appeals by Dicks to the District Court or the Eleventh Circuit has been successful.[11]

---

**6.** Case No. 91–11635, filed in Hillsborough County, Florida.

**7.** Dicks also argued before Judge Menendez that the Judgment should be set aside because a fraud on the court had been committed by the Bank when it obtained the Judgment. Judge Menendez also rejected this contention.

**8.** She appealed that decision but that appeal was ultimately dismissed for failure to prosecute.

**9.** *Supra,* fn. 3.

**10.** *Supra,* fn. 4.

**11.** *See, e.g., Order Dismissing Appeal* (Doc. No. 9 in Appeal No. 03–16183) (11th Cir.);

Most recently, Dicks returned to the Circuit Court for Hillsborough County and again challenged the validity of the Bank's Judgment through yet another filing arguing the voidness of the Bank's Judgment. Once again, at a hearing held on January 9, 2004, Circuit Judge Vivian C. Maye had before her the argument that the Bank's Judgment was "void *ab initio.*" Judge Maye denied Dicks' motion finding that the "specific or substantially related and similar issues raised ... by Defendant Dicks regarding alleged voidness of the April 29, 1993 Default Final Judgment by Judge Spicola are *res judicata* and were considered by and ruled upon by Judge Menendez in his September 16, 1999 Order ... and which Ms. Dicks appealed, but which appeal was dismissed for lack of prosecution...." Judge Maye further found that Dicks' contentions concerning the Judgment "are without merit and that the default was entered following the striking of her pleadings by Judge Spicola due to willful failure to attend a properly noticed pre-trial hearing or hearing on her own Motion for Re–Hearing."

Importantly, Judge Maye specifically rejected Dicks' argument that the Judgment was void *ab initio* for lack of jurisdiction or due process. Furthermore, Judge Maye concluded that Dicks' 1999 challenge to the Judgment before Judge Menendez was also "fully litigated" by Dicks and resulted in an adverse decision to her. Judge Maye found no merit in Dicks' contention that Judge Menendez lacked either the jurisdiction or the legal authority to find as he did. As succinctly stated by Judge Maye, Judge Menendez made his findings and rulings in 1999 and those findings and conclusions "became final and binding on all of those matters, including the issues which Ms. Dicks again continues to raise today."

### Legal Basis for Injunctive Relief

■ As Judge Jones discusses in the case of *Ray v. Lowder,* when dealing with a typical request for injunctive relief, the traditional standards apply—the moving party has the burden of proving four elements, that: (1) the movant will succeed on the merits of the case, (2) a substantial threat exists that the movant will suffer irreparable injury if the injunction is not granted, (3) the threatened injury to the movant outweighs the threatened harm the injunction may cause the opposing party, and (4) granting the injunction will not disserve the public interest. *Ray v. Lowder,* 2003 WL 22384806 *at \*2* (citing *Warren Publ'g., Inc. v. Microdos Data Corp.,* 115 F.3d 1509, 1516 (11th Cir.1997)).

■ However, the courts dealing with the traditional standards in the context of an injunction prohibiting continued vexatious litigation have adopted standards more suitable to the circumstances presented by such litigation. *Id.* (citing *In re Martin–Trigona,* 737 F.2d 1254, 1262 (2d Cir.1984)). In making the determination whether the litigant's conduct is sufficient to justify the entry of what is referred to as a *Martin–Trigona* injunction to stop continued vexatious litigation by persons with a history of such litigation and those acting "at the behest of or in concert" with the primary object of the injunction, it is sufficient to show a history of litigation entailing vexation, harassment, and needless burden on the courts and their sup-

Order Affirming Order by Bankruptcy Judge (Doc. No. 49 in Adv. Pro. No. 01–467) (Judge Kovachevich); *Order Denying Motion for Leave to Appeal* (Doc. No. 87 in Adv. Pro. No. 01–467)(Judge Merryday); *Order Dismissing Appeal* (Doc. No. 320 in the main bankruptcy case) (Judge Bucklew); *Order Denying Motion for Leave to Appeal* (Doc. No. 260 in the main case)(Judge Lazarra); *Order Dismissing Appeal* (Doc. No. 308 in the main case)(Judge Moody).

porting personnel. *Martin–Trigona v. Shaw,* 986 F.2d 1384, 1387 (11th Cir.1993)(enjoining mother of respondent Martin–Trigona).

■ In order to support a *Martin–Trigona* injunction, the movant must show: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits, (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective, good-faith expectation of prevailing, (3) whether the litigant is represented by counsel, (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel, and (5) whether other sanctions would be adequate to protect the courts and other parties. *Ray v. Lowder, supra* at *2 (citing *Safir v. United States Lines, Inc.,* 792 F.2d 19, 24 (2nd Cir.1986), *cert. denied,* 479 U.S. 1099, 107 S.Ct. 1323, 94 L.Ed.2d 175 (1987)). *See also In re Busby,* 1998 U.S. District Lexis 16674; and *Riccard v. Prudential,* 307 F.3d 1277 (11th Cir.2002)(Eleventh Circuit upheld a *Martin–Trigona* order issued by Judge Gregory Presnell, another judge of the District Court for the Middle District of Florida); *In re America West Airlines,* 240 B.R. 34, *aff'd* 217 F.3d 1161 (9th Cir.2000).

■ In applying these standards, it is clear for purposes of this preliminary injunction that Dicks and her relatives—to the extent that they echo these very same arguments in attacking the Judgment— have engaged in and are engaged in vexatious litigation. This places a needless burden on the courts and the courts' personnel, to include its judges at both the trial and appellate levels. There is a long history of similar vexatious, harassing, and duplicative attacks on the validity of the Judgment motivated by Dicks' desire not to pay a judgment that, for reasons that

have no legal validity, she believes should not be enforced.

■ The Court finds as a matter of law that Dicks' refusal to accept what the law provides is not a good-faith motive nor does it give grounds to a good-faith expectation of prevailing. The issue of the voidness of the Judgment was determined by Judge Menendez in 1999 and again most recently in 2004 by Judge Maye. Their decisions are binding on this Court. The law is clear that The principles of *res judicata* apply to questions of jurisdiction as well as to other issues, as well as to jurisdiction of the subject matter as of the parties. *Treinies v. Sunshine Mining Co.,* 308 U.S. 66, 77, 60 S.Ct. 44, 84 L.Ed. 85 (1940)(quoting *American Surety Co. v. Baldwin,* 287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231 (1932)). After a court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of *res judicata* is made has not the power to inquire again into that jurisdictional fact. *Stoll v. Gottlieb,* 305 U.S. 165, 172, 59 S.Ct. 134, 83 L.Ed. 104 (1982). As stated by the United States Supreme Court, After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to *jurisdiction* there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first. *Id.* (emphasis added).

While Dicks is not currently represented by counsel, she has had three law firms represent her in this case alone. None of these law firms has made the arguments to the extreme that she has made and continues to make today. These arguments have only grown since she terminated the representation of her last counsel.

■ The Court has previously admonished Dicks not to continue this repetitive and vexatious course of conduct. The Court has instructed her that if it did continue, injunctive relief would be considered along with other appropriate relief including the possibility of sanctions. As this Court has also previously noted on the record in open court, Dicks has been given more latitude—by a "multiple of ten"—than would be given to any lawyer. Transcript of May 8, 2003 hearing, at 60. This Court has been extremely deferential to Dicks' *pro se* status. However, the *pro se* status is not a license to engage in harassing and vexatious litigation that this record reflects may be endless in duration. This Court can only conclude these filings will not stop until a court enters an order requiring it to stop. No number of denials of motions, appeals, affirmances of this Court, or dismissals of appeals have appeared to dissuade Dicks or her family and co-defendants from this course of conduct.

This course of conduct continues through her brother's recent filing of a suit in the Northern District of California naming everyone involved in the case, including this Judge, as a defendant. That case is pending before another judge and will be dealt with by that judge and is excepted from the scope of this preliminary injunction.

Accordingly, the Court considers it to be well within its discretion to enjoin Dicks and her co-defendants from taking any further action to attack the validity of the Judgment, with the exception that matters that are pending before other judges or appeals from this court or other judges' rulings that may result from adverse rulings by those other judges will not be enjoined. Accordingly, the district court litigation in California will not fall within this injunction unless that matter is dismissed. Additionally, the state court appeal from Judge Maye's decision will not fall within this injunction until it is resolved. However, no stay of Judge Maye's order having been obtained, the order remains in force and will be afforded full faith and credit by this Court.

The Court also concludes that under the special circumstances of a case of this nature no bond is necessary or required.

Accordingly, for those reasons, it is

ORDERED:

1. Any filing or submission by Dicks, Donald Dicks, Dicks–Clark, Lypka, or their agents or attorneys which in any manner rely upon a continued challenge to the validity of the Judgment are enjoined and prohibited without an initial submission of any such proposed filing to this Court for review, subject to the following exceptions:

a. This injunction shall not extend to the existing district court action in California and Dicks' appeal of Judge Maye's order.

b. Nothing in this order shall be construed as denying access, for appellate purposes, to Dicks, Donald Dicks, Dicks–Clark, Lypka, or their agents or attorneys, to the United States District Courts and the United States Courts of Appeals, without prejudice to the Bank or Trustee to seek a similar injunction in such courts.[12]

12. *See Martin–Trigona v. Lavien,* 737 F.2d at 1264 in which the Second Circuit, *sua sponte,* issued an order requiring Martin–Trigona to show cause why a similar injunction should not be entered as to filings in the appellate court "[b]ecause resort to appellate procedures carries with it the same vexatious and harassing consequences as proceedings in trial courts and thereby results in a similar impairment of the administration of justice...."

2. The Court will review such submissions in chambers and, if appropriate, enter an order either denying the request, granting it, or scheduling the matter for hearing, depending on the circumstances and the Court's conclusions. If this Court permits a filing in a state court action, the Court shall also determine whether a copy of this Preliminary Injunction should be filed in that action.

3. The Clerk shall file a copy of this Preliminary Injunction in the main case as well as the adversary proceeding.